DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant Charles White appeals from the Wayne County Court of Common Pleas, which denied his motion to suppress evidence. This Court affirms.
 I. {¶ 2} Victor Mackey committed a minor traffic violation while driving in the City of Wooster. Appellant was a passenger in his car. Officer Christopher Conwill of the Wooster Police Department stopped the car to issue a warning ticket. However, Officer Conwill did not have his traffic violation warning book, so he called another officer, Officer Waddell, so as to "use his traffic warning book as well as have his canine partner run around the vehicle while I was taking care of the written warning." Officer Waddell arrived within seven minutes.
 {¶ 3} In the meantime, Officer Conwill asked the passengers for identification, and the response concerned him. The passengers could not produce identification and were "very slow in giving me the information as if they were thinking about it." Officer Conwill explained: "In my experience, I believe that they were probably giving me false information as most people know their name and date of birth, relatively easy and don't have to think about it." As it turned out, Appellant had given a false name, "Andre McMeens." Officer Conwill also testified that the stop occurred in a high crime area, so he had reason to be apprehensive.
 {¶ 4} When Officer Waddell arrived, he identified himself to the car's occupants, informed them that he would be walking his dog around the car. He asked if there were any drugs in the car that would cause the dog to alert and instructed them to keep their hands on the dash or seat in front of them. When Officer Waddell turned away to get his dog, Appellant "immediately reached down to his pocket." Upon seeing this, Officer Conwill opened the car door, asked Appellant what he was doing, and removed him from the car. Officer Conwill then reached into Appellant's pocket and removed several items, one of which was a rock of crack cocaine. Officer Conwill "immediately handcuffed and Mirandized and put him in the rear of — at that time my patrol car." The dog sniff was not performed.
 {¶ 5} The Wayne County Grand Jury indicted Appellant for possession of a controlled substance (crack cocaine), in violation of R.C. 2925.11(A)(C)(4)(a), a fifth degree felony. Appellant moved to suppress the evidence seized during the search, as well as the fruits of that search. The court denied the motion. Appellant then pled no contest. The court found him guilty and sentenced him accordingly. Appellant appealed and asserted one assignment of error for review.
 II. Assignment of Error
"THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE, IN VIOLATION OF HIS RIGHTS UNDER U.S. CONST. AMEND. IV, XIV, AND OHIO CONST. ART. I, SEC. 14."
 {¶ 6} Appellant asserts that the trial court erred when it denied his motion to suppress the evidence seized during the police officer's search of his person, and alleges several ways in which the search violated the Fourth Amendment. This Court disagrees.
 {¶ 7} A motion to suppress evidence under theFourth Amendment involves a mixed question of law and fact. Ornelas v.United States (1996), 517 U.S. 690, 696-97, 134 L.Ed.2d 911. This Court grants deference to the trial court's findings of fact, but conducts a de novo review of whether the trial court applied the appropriate legal standard to those facts. Id. We review "findings of historical fact only for clear error and give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." State v. Jones
(Mar. 13, 2002), 9th Dist. No. 20810, quoting Ornelas,517 U.S. at 699.
 {¶ 8} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures. See Maryland v.Buie (1990), 494 U.S. 325, 331, 108 L.Ed.2d 276. Section 14, Article I of the Ohio Constitution contains nearly identical language and "its protections are coextensive with its federal counterpart." State v. Kinney (1998), 83 Ohio St.3d 85, 87, citing State v. Robinette (1997), 80 Ohio St.3d 234, 238. Courts must exclude evidence obtained in violation of these constitutional guarantees. See Mapp v. Ohio (1961),367 U.S. 643, 655-56, 6 L.Ed.2d 1081.
 {¶ 9} Appellant has alleged a series of Fourth Amendment violations, and insists that any one of them alone would warrant exclusion of the evidence seized: (1) the stop was improper; (2) the delay was improper; (3) there was no reasonable suspicion to seize him; (4) the pat-down was excessive; and (5) there was no probable cause to search him. We will address each allegation.
 {¶ 10} Appellant first contends that the stop was improper because it was merely a pretext to search the car for drugs and Appellant was only a passenger in the car. However, the United States Supreme Court has "flatly dismissed the idea that an ulterior motive might serve to strip the [police] of their legal justification." Whren v. United States (1996), 517 U.S. 806,812, 135 L.Ed.2d 89. Therefore, so long as Victor Mackey did in fact commit a traffic violation, Officer Conwill was justified in stopping the car, regardless of any other motives he may have had. See id. Similarly, "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop." Maryland v. Wilson (1997), 519 U.S. 408, 415,137 L.Ed.2d 41. In this case, Officer Conwill saw the traffic violation. This has not been disputed. Accordingly, Officer Conwill was justified in stopping the car and ordering Appellant out of the car. See id.
 {¶ 11} Appellant next contends that the delay, to await Officer Waddell with the warning ticket book, was improper because it unreasonably extended the time required to issue the warning, so as to allow time for the drug dog to arrive. Even a stop that was lawful at its inception can violate theFourth Amendment if "its manner of execution unreasonably infringes" constitutionally protected interests. United States v. Jacobsen
(1984), 466 U.S. 109, 124, 80 L.Ed.2d 85. See, e.g., UnitedStates v. Place (1983), 462 U.S. 696, 710, 77 L.Ed.2d 110
(finding a 90-minute delay to be unreasonable). More specifically, "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." Illinois v. Caballes (2005),543 U.S. 405, 407, 160 L.Ed.2d 842. However, a delay of "less than 10 minutes" was not unreasonable. Id. at 406. In another case, a delay as long as 20 minutes was deemed reasonable. See, e.g.,United States v. Sharpe (1985), 470 U.S. 675, 688,84 L.Ed.2d 605. In the present case, the delay was approximately seven minutes. This has not been disputed. The trial court did not find this to be unreasonable under the circumstances. On review, this Court finds this delay to be reasonable. Caballes,543 U.S. at 408.
 {¶ 12} Appellant also asserts that after Officer Conwill had removed him from the car, Officer Conwill had no basis to seize Appellant or continue the search. Appellant contends that, even if Officer Conwill had merely performed a pat-down of his outer clothing even that would have been improper because the evidence does not justify a suspicion that Appellant was armed. See Terryv. Ohio (1968), 392 U.S. 1, 27, 20 L.Ed.2d 889 (describing "a narrowly drawn authority to permit a reasonable search for weapons"). In fact, Officer Conwill did not conduct a pat-down, but instead reached directly into Appellant's pocket and retrieved the contents, which included a quantity of crack cocaine.
 {¶ 13} Appellant further contends that, even if Officer Conwill had been justified in conducting a pat-down of his outer clothing, the search into his pocket was beyond the allowable scope of a pat-down. See, e.g., State v. Weese, 9th Dist. No. 20769, 2002-Ohio-3750; State v. Baez (July 29, 1987), 9th Dist. No. 4200. Finally, Appellant contends that even if suspicious answers and furtive movements provide reasonable suspicion, they do not provide probable cause necessary to justify the intrusive search into his pocket conducted by Officer Conwill. See, e.g.,State v. Kratzer (1972), 33 Ohio App.2d 167. Thus, our analysis begins with the doctrine of reasonable suspicion and concludes with probable cause.
 {¶ 14} "[I]n determining whether the seizure and search were `unreasonable' our inquiry is a dual one — whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 19-20. Accord State v. Andrews (1991), 57 Ohio St.3d 86, 87 (stating that "we must analyze: (1) the investigatory stop, and (2) the protective search"); State v. Jones (Mar. 13, 2002), 9th Dist. No. 20810 (applying the two-step analysis).
"The typical Terry stop entails a brief detention sufficient for the police to ask questions pertaining to the suspicious circumstances. However, an officer does not have authority to automatically conduct a search of a detainee when a valid stop has been initiated. In order to conduct a pat-down search for weapons, an officer must have reason to believe that an individual is armed and dangerous. * * * Reasonableness is not determined by incohate [sic] and unparticularized suspicions but rather by specific reasonable inferences an officer is entitled to draw from the circumstances in light of his experiences. This will enable an officer to pursue an investigation absent fear of violence. The limited search is not intended to provide the officer with an opportunity to discover evidence of a crime." (Internal citations and quotations omitted.) Akron v. Bowen,
9th Dist. No. 21242, 2003-Ohio-830, ¶ 9.
Simply stated, the "purpose of a Terry stop is not to accuse, but to investigate." Jones at *3. See, also, State v. Dietry,
9th Dist. No. 03CA0052, 2004-Ohio-2661, ¶ 6 (warning against a valid search escalating beyond its allowable limit).
 {¶ 15} The reasonable suspicion necessary to justify an investigatory stop and frisk requires that the officers must be able to point to "specific and articulable facts" warranting a rational belief that criminal behavior is imminent. Terry,392 U.S. at 21. Accord Andrews, 57 Ohio St.3d at 87. We will not condone "intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches." Terry,392 U.S. at 22. Thus, reasonable suspicion is measured by an objective standard: "[W]ould the facts available to the officer at the moment of the seizure * * * `warrant a man of reasonable caution in the belief' that the action taken was appropriate?"State v. Bobo (1988), 37 Ohio St.3d 177, 178-79, quotingTerry, 392 U.S. at 21-22.
 {¶ 16} The Ohio Supreme Court has identified certain specific and articulable facts that would justify an investigatory stop by way of reasonable suspicion, factors which fall into four general categories: (1) location; (2) the officer's experience, training or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances. Bobo, 37 Ohio St.3d at 178-79;Andrews, 57 Ohio St.3d at 87-88. No single factor is dispositive; the decision must be viewed based on the totality of the circumstances. Bobo, 37 Ohio St.3d at paragraph one of the syllabus; State v. Davison, 9th Dist. No. 21825,2004-Ohio-3251, at ¶ 6, 15.
 {¶ 17} Location relates to whether the confrontation occurred in a reputed "high crime" area, an area of known drug activity, or perhaps a location under police surveillance. Bobo,37 Ohio St.3d at 179 (heavy drug activity); Andrews,57 Ohio St.3d at 88 (high crime). But, see, State v. Crosby (1991),72 Ohio App.3d 148, syllabus (holding that individuals talking in or near a car, even when parked in an area known for drug activity, does not, without more, justify a search); State v. Davis (2000),140 Ohio App.3d 659, 664-65 (stating that merely departing a house that is under surveillance is insufficient to justify a search).
 {¶ 18} The officer's experience carries certain authority.Terry, 392 U.S. at 5 (officer had 39 years of experience);Bobo, 37 Ohio St.3d at 179 (20 years); Andrews,57 Ohio St.3d at 88 (12.5 years). Alternatively, an officer may be aware of particular crime or danger in the vicinity, or have particularized knowledge of how crimes, such as drug transactions, occur in the area. Bobo, 37 Ohio St.3d at 179;Davison at ¶ 9 (officer had previously arrested the suspect for a shooting incident, at which time the suspect had been armed).
 {¶ 19} The suspect's conduct or appearance includes suspicious, inexplicable, or furtive movements, such as watching-out, ducking, hiding, fleeing, or discarding an object.Bobo, 37 Ohio St.3d at 178-79 (suspect ducking out of sight and other furtive movements); Andrews, 57 Ohio St.3d at 88 (suspect running through a dark courtyard threw an object to the ground);State v. Lee (1998), 126 Ohio App.3d 147, 148 (cracked and burnt lips indicative of smoking crack cocaine).
 {¶ 20} The surrounding circumstances include the time of day or night, because certain activities would ordinarily occur late at night or because weapons would be less obvious in the dark.Bobo, 37 Ohio St.3d at 178-79 (night); Andrews,57 Ohio St.3d at 88 (after nightfall, in a darkened area). Circumstances may also include an officer being out of a vehicle, away from protection, or without backup. Bobo, 37 Ohio St.3d at 178-79;Andrews, 57 Ohio St.3d at 88.
 {¶ 21} In the present case, Officer Conwill testified that the stop took place in a high crime area, that he has been an officer for over three years, and that the stop occurred in the afternoon. Officer Conwill testified that the conduct of the passengers, including Appellant, made him suspicious, explaining:
"[Prosecutor:] Did anything about the occupants of the vehicle cause you concern at that time?
"[Officer Conwill:] Yes, while I was collecting the information from the front right passenger and the rear passenger [i.e., Appellant] both did not have any picture State ID or anything like that. They both gave me their name and date of birth.
Both of them were very slow in giving me the information as if they were thinking about it. In my experience, I believe that they were probably giving me false information as most people know their name and date of birth, relatively easy and don't have to think about it."
Officer Conwill continued to describe the incident, explaining that Officer Waddell had instructed the car's occupants to place their hands on the dash or seat in front of them, and had then turned away to go and get his dog.
"[Officer Conwill:] I was watching the occupants of the vehicle, like I said, and I watched the right rear passenger, [Appellant,] watch Officer Waddell as he walked back to his patrol car. [Appellant's] hands were on the seat in front of him as Officer Waddell asked him to do. As Officer Waddell left the — I would say [Appellant's] field of vision, going back to his patrol car and [Appellant] felt that [Officer Waddell] was far enough out of sight [and] not realizing I was standing there, [Appellant] immediately reached down to his pocket.
"[Prosecutor:] Did that cause you concern?
"[Officer Conwill:] Yes, it did.
"[Prosecutor:] What did you do in response to that action?
"[Officer Conwill:] I immediately opened up the door, asked him what he was doing and pulled him out of the vehicle.
"[Prosecutor:] What happened once you removed the passenger — the rear passenger from that vehicle?
"[Officer Conwill:] I checked the pocket that he had stuck his hand into."
Officer Conwill clarified further on cross-examination.
"[Defense Counsel:] Okay. And then in your report * * * it reads very much the way you have testified here today. It says, I asked him, this was when he was reaching for his pocket, I had him step out of the vehicle and asked him what he was doing? He stated he was trying to get his cell phone out of his pocket. I reached into his pocket and pulled out the contents, is that an accurate statement of what happened?
"[Officer Conwill:] Yes."
Therefore, the relevant facts are not in dispute. Officer Conwill asked for identification and Appellant answered hesitantly and falsely, arousing suspicion. Officer Waddell instructed Appellant to keep his hands on the seat in front of him, but as soon as Officer Waddell appeared to be out of sight, Appellant reached for his pocket. Officer Conwill reacted to Appellant's movement, seized him from the car, and initiated the search.
 {¶ 22} Based on the testimony presented and considering the totality of the circumstances, we must agree with the trial court that the evidence before us justifies Officer Conwill's action at its inception. Officer Conwill could reasonably have inferred from Appellant's conduct that Appellant intended to mislead the officers as to his identity and, more importantly, that he had something concealed in his pocket that he wished to keep hidden from the officers, particularly from Officer Waddell. Since Appellant's action followed immediately after the forewarning of the dog sniff, a probable inference would be that Appellant possessed drugs. However, it is not unreasonable to infer that Appellant may have had a weapon or something else of particular concern to Officer Waddell. This Court finds that these facts and inferences satisfy the requirements of reasonable suspicion. The "Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." (Internal quotations omitted.) Bobo,37 Ohio St.3d at 180, quoting Adams v. Williams (1972),47 U.S. 143, 145-46, 32 L.Ed.2d 612. Similarly, the Fourth Amendment would not require Officer Conwill to ignore an apparent threat to his fellow officer.
 {¶ 23} On the other hand, the Ohio Supreme Court has explained that the "frisk, or protective search, approved inTerry is limited in scope to a pat-down search for concealed weapons when the officer has a reasonable suspicion that the individual whose behavior he is investigating at close range may be armed and dangerous." Andrews, 57 Ohio St.3d at 89, citingTerry, 392 U.S. at 27. The testimony in this case demonstrates that Officer Conwill did not conduct a Terry-type pat-down, but instead reached directly into Appellant's pocket. Appellant protests that this search was unreasonably invasive, and cites cases from this Court, e.g.:
"In the present case, Officer Croy did not conduct a pat-down search for weapons on Ms. Weese prior to placing her in his police cruiser; rather, as found by the trial court, Officer Croy had Ms. Weese empty her pockets. Having Ms. Weese empty her pockets impermissibly exceeded the scope of a pat-down search for weapons under Terry and its progeny and, therefore, was an unreasonable search under the Fourth Amendment.
"Accordingly, the blue round pills discovered during the search of Ms. Weese's pockets should have been suppressed. Furthermore, because these pills served as the basis for Ms. Weese's arrest, the white powdery substance discovered in Ms. Weese's purse during the search incident to arrest should have been excluded from evidence as fruit of the poisonous tree. Based on the foregoing, we conclude that the trial court erred in denying Ms. Weese's motion to suppress." (Internal citations omitted; paragraph break inserted for clarity.) Weese at ¶ 14. See, also, Baez, supra.
As was explained above, even a justifiable search may violate the Fourth Amendment if "its manner of execution unreasonably infringes" constitutionally protected interests. Jacobsen,466 U.S. at 124.
 {¶ 24} Thus, we consider Appellant's final argument: that Officer Conwill lacked probable cause to search Appellant's person. Probable cause "has been defined as `a reasonable ground for belief of guilt.'" State v. Moore, 90 Ohio St.3d 47, 49,2000-Ohio-10, quoting Carroll v. United States (1925),267 U.S. 132, 161, 69 L.Ed. 543. "A determination of probable cause is made from the totality of the circumstances. Factors to be considered include an officer's observation of some criminal behavior by the defendant, furtive or suspicious behavior, flight, events escalating reasonable suspicion into probable cause, association with criminals and locations." State v.Shull, 5th Dist. No. 05-CA-30, 2005-Ohio-5953, ¶ 20, citingState v. Timson (1974), 38 Ohio St.2d 122, syllabus.
 {¶ 25} In the present case, Appellant was first hesitant and deceptive with Officer Conwill about his identification. Then, upon realizing that the officers intended to conduct a dog sniff of the car, Appellant watched for an opportunity when Officer Waddell's back was turned and then made a furtive movement — reaching into his pocket in direct disregard of Officer Waddell's request that he keep his hands on the seat, in plain sight. Based on Appellant's conduct in response to police questioning and the impending dog sniff, Officer Conwill could reasonably suspect some criminality in regard to whatever Appellant was concealing in, or retrieving from, this particular pocket. See id. See, also, State v. Jones, 4th Dist. No. 03CA61, 2004-Ohio-7280, ¶37-44; Dietry, at ¶ 7. This Court concludes, based on the evidence in the record and findings of the trial court, that Officer Conwill had probable cause to conduct the search of Appellant's pocket, under the circumstances depicted in this case.
 III. {¶ 26} Appellant's assignment of error is overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Carr, P.J. Moore, J. Concur.