OPINION
{¶ 1} Appellant James B. Edwards appeals his conviction in the Stark County Court of Common Pleas for one count of possession of cocaine in violation of R.C. 2925.11(A)(C)(4)(B) a felony of the fourth degree, and one count of possession of dangerous drugs in violation of R.C.4729.51(C)(3) a misdemeanor of the first degree. The appellee is the State of Ohio.
 {¶ 2} The following facts give rise to this appeal.
 {¶ 3} On December 16, 2005, around 9:20 p.m., Sergeant John Dittmore was conducting an investigation at a Canton bar known as the Pastime Inn. Sergeant Dittmore is the supervisor of the Gang Task Force whose main objectives include suppressing neighborhood gang activity and street drug sales. The Pastime Inn, located in the 600 block of 9th Street S.W., is reputed to be the location of frequent drug sales. Sergeant Dittmore testified that drug sales are commonly transacted by buyers and sellers who wait in their cars outside the bar.
 {¶ 4} This evening Sergeant Dittmore was in uniform but driving an unmarked car. Patrolman Jackson was Sergeant Dittmore's partner. The pair was sitting in their car in front of the Pastime when they saw a white Chevy Lumina pull up, eastbound on 9th Street S.W. The Lumina slowed to pull into a parking space. *Page 3 
 {¶ 5} A passenger in the vehicle made eye contact with Sergeant Dittmore and the Lumina suddenly "changed course" and continued eastbound on 9th Street instead of parking. Sergeant Dittmore testified that he found it "somewhat suspicious" that the occupants of the Lumina recognized the police and decided not to stop.
 {¶ 6} Sergeant Dittmore and Officer Jackson began to follow the Lumina. The Lumina turned around and proceeded westbound on 9th Street S.W. Sergeant Dittmore radioed Patrolman Overdorf, another officer who was also on 9th Street S.W., and told him to watch the Lumina. Officer Overdorf was in uniform and driving an unmarked vehicle. Officer Overdorf followed the Lumina as it returned to the Pastime and stopped in front of the bar, this time facing westbound on the north side of the street.
 {¶ 7} At no time did any of the officers turn on lights or sirens. The police officers did not perform a traffic stop of the Lumina.
 {¶ 8} After the Lumina stopped, the parties remained inside the vehicle. After about two minutes, Officer Overdorf approached the Lumina on foot and spoke to the driver. When asked for identification, the driver provided a state I.D., which prompted Officer Overdorf to inquire whether the driver had a driver's license. The officers testified that Ohio does not give state I.D.'s to licensed drivers.
 {¶ 9} The driver told Officer Overdorf that he did not have driving privileges. The driver was then placed under arrest. He was subsequently identified as appellant James Brown Edwards.
 {¶ 10} During a search incident to the arrest, Officer Overdorf found crack cocaine and hydrocodone in appellant's right front jeans pocket. *Page 4 
 {¶ 11} Appellant filed a motion to suppress evidence. The trial court conducted the suppression hearing on February 17, 2006. At the conclusion of the hearing the trial court denied appellant's motion to suppress the evidence gathered against him. Appellant then entered pleas of no contest to the charges and the court found him guilty of both counts. The trial court sentenced appellant to an aggregate prison term of eight months.
 {¶ 12} Appellant timely appealed and raises the following sole assignment of error for our consideration:
 {¶ 13} "I. THE TRIAL COURT ERRED IN DENYING THE MOTION TO SUPPRESS THE EVIDENCE OBTAINED IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 14 OF THE OHIO CONSTITUTION WHERE THE STATE FAILED TO ESTABLISH THAT THE POLICE HAD REASONABLE SUSPICION THAT JAMES EDWARDS WAS ENGAGED IN CRIMINAL ACTIVITY TO CONDUCT OF [SIC] TERRY STOP OF HIM."
 I. {¶ 14} In his sole assignment of error, appellant argues that the trial court erred in denying his motion to suppress and in finding that Sergeant Dittmore and Officer Overdorf had a reasonable suspicion to stop appellant and request he produce identification. We disagree.
 {¶ 15} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has *Page 5 
incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. State v. Curry (1994), 95 Ohio App. 3d 93, 96; State v.Caytor (1993), 85 Ohio App. 3d 623, 627; State v. Guysinger (1993),86 Ohio App. 3d 592. As the United States Supreme Court held in Ornelas v.U.S. (1996), 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 16} In the instant appeal, appellant's challenge of the trial court's ruling on his motion to suppress is based on the third method. Accordingly, this court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in this case.
 {¶ 17} In a motion to suppress, the trial court assumes the role of trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. Guysinger, supra, at 594 (citations omitted). Accordingly, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Id., citing State v. Fausnaugh (Apr. 30, 1992), Ross App. No. 1778.
 {¶ 18} Appellant argues that the police did not have a reasonable suspicion to believe that appellant had committed, or was about to commit a criminal offense.
 {¶ 19} "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable *Page 6 
cause. The first part of the analysis involves only a determination of historical facts, but the second is a mixed question of law and fact".Ornelas v. United States (1996), 517 U.S. 690, 695-96, 116 S.Ct. 1657,1661-62. In general, we review determinations of historical facts only for clear error. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." Id. at 698, 116 S.Ct. at 1663. On the other hand, determinations of reasonable suspicion and probable cause are reviewed de novo. Id.
 {¶ 20} The first issue is whether the factual findings, as determined by the lower court at the evidentiary hearing on the motion to suppress evidence, were clearly erroneous. "A finding is `clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States GypsumCo. (1947), 333 U.S. 364, 395. Moreover, where the evidence would support several conclusions but the lower court has decided to weigh more heavily in one direction, "[s]uch a choice between . . . permissible views of the weight of evidence is not `clearly erroneous'."United States v. Yellow Cab Co. (1949), 338 U.S. 338, 342. In the case at hand, testimony of two police officers was presented. Specifically, the appellant argues that the testimony was conflicting with regard to whether the police were conducting a consensual encounter, or whether the police officers effectively conducted a Terry-stop and search of appellant by approaching the vehicle and requesting appellant produce his driver's license.
 {¶ 21} We conclude that the trial court's factual findings do not constitute clear error. Due weight has been given to the inferences drawn by the trial court and the *Page 7 
testifying law enforcement officers. After careful review of the record, there is no indication that the trial court has made a mistake. The trial court has the authority to decide in whose favor the weight of the evidence will lie. Here, the trial court decided in favor of Sergeant Dittmore and Officer Overdorf. Such a choice is not clearly erroneous.Yellow Cab, 338 U.S. at 342.
 {¶ 22} The next question is whether the contact of the police officers with appellant violated the appellant's Fourth Amendment rights. Contact between police officers and the public can be characterized in three different ways. State v. Richardson, 5th Dist. No. 2004CA00205, 2005-Ohio-554 at ¶ 23-27. The first is contact initiated by a police officer for purposes of investigation. "[M]erely approaching an individual on the street or in another public place [,]" seeking to ask questions for voluntary, uncoerced responses, does not violate theFourth Amendment. United States v. Flowers (6th Cir.1990), 909 F.2d 145,147. The United State Supreme Court "[has] held repeatedly that mere police questioning does not constitute a seizure." Florida v.Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); see also INS v. Delgado, 466 U.S. 210, 212, 104 S.Ct. 1758, 80 L.Ed.2d 247
(1984). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage." Bostick, supra, at 434-435, 111 S.Ct. 2382
(citations omitted). The person approached, however, need not answer any question put to him, and may continue on his way. Florida v. Royer
(1983), 460 U.S. 491,497-98 Moreover, he may not be detained even momentarily for his refusal to listen or answer. Id. *Page 8 
 {¶ 23} The second type of contact is generally referred to as "aTerry stop" and is predicated upon reasonable suspicion. Richardson,supra; Flowers, 909 F.2d at 147; See Terry v. Ohio (1968), 392 U.S. 1. This temporary detention, although a seizure, does not violate theFourth Amendment. Under the Terry doctrine, "certain seizures are justifiable . . . if there is articulable suspicion that a person has committed or is about to commit a crime" Florida, 460 U.S. at 498. In holding that the police officer's actions were reasonable under theFourth Amendment, Justice Rehnquist provided the following discussion of the holding in Terry: "In Terry this Court recognized that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest. TheFourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.Adams v. Williams (1972), 407 U.S. 143, 145-47, 92 S.Ct. 1921, 1923-24,32 L.Ed.2d 612
 {¶ 24} The Fourth Amendment requires that an officer have had a "reasonable fear for his own or others' safety" before frisking.Terry v. Ohio (1968), 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889. Specifically, "[t]he officer . . . must be able to articulate something more than an `inchoate and unparticularized suspicion or hunch.'" UnitedStates v. Sokolow (1989), 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1
(quoting Terry, *Page 9 392 U.S. at 27, 88 S.Ct. 1868). Whether that standard is met must be determined "`from the standpoint of an objectively reasonable police officer,'" without reference to "the actual motivations of the individual officers involved." United States v. Hill (D.C. Cir.1997), 131 F.3d 1056, 1059 (quoting Ornelas v. United States (1996), 517 U.S. 690,696, 116 S.Ct. 1657, 134 L.Ed.2d 911).
 {¶ 25} The third type of contact arises when an officer has "probable cause to believe a crime has been committed and the person stopped committed it." Richardson, supra; Flowers, 909 F.2d at 147. A warrantless arrest is constitutionally valid if: "[a]t the moment the arrest was made, the officers had probable cause to make it — whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the * * * [individual] had committed or was committing an offense." State v. Heston (1972),29 Ohio St.2d 152, 155-156, 280 N.E.2d 376, quoting Beck v. Ohio (1964),379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142. "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." Ornelas v. United States (1996), 517 U.S. 690,696, 116 S.Ct. 1657, 1661-1162. A police officer may draw inferences based on his own experience in deciding whether probable cause exists.See, e.g., United States v. Ortiz (1975), 422 U.S. 891, 897,95 S.Ct. 2585, 2589.
 {¶ 26} In Florida v. Bostick (1991), 501 U.S. 429, 111 S.Ct. 2382, the United States Supreme Court reiterated that "a consensual encounter does not trigger *Page 10 Fourth Amendment scrutiny. See Terry v. Ohio, 392 U.S. 1, 19, n. 16,88 S.Ct. 1868, 1879, n. 16, 20 L.Ed.2d 889. Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions, Florida v. Rodriguez, 469 U.S. 1, 5-6,105 S.Ct. 308, 310-311, 83 L.Ed.2d 165, ask to examine identification, INS v.Delgado, 466 U.S. 210, 216, 104 S.Ct. 1758, 1762-1763, 80 L.Ed.2d 247, and request consent to search luggage, Florida v. Royer, 460 U.S. 491,501, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229, provided they do not convey a message that compliance with their requests is required".501 U.S. at 434-35, 111 S.Ct. at 2386. The courts in Ohio have taken a similar approach: "[b]ecause the vehicle was parked, appellant was not subjected to a seizure per se as happens when a motorist is stopped in transit by a police officer. Numerous Ohio courts . . . have held that a police approach and encounter with a stationary vehicle is consensual in nature, thereby making the Fourth Amendment inapplicable. See, e.g.,State v. Welz (Dec. 9, 1994), Lake App. No. 93-L-137, unreported;Cuyahoga Falls v. Sandstrom (June 21, 1995), Summit App. No. 17000, unreported; State v. Kiggans (Nov. 20, 1995), Stark App. No. 1995CA00157, unreported; State v. Osborne (Dec. 13, 1995), Montgomery App. No. CA 15151, unreported". State v. Lott (Dec. 26, 1997), 11th
Dist. No. 96-A-0011.
 {¶ 27} The appellant does not contest in his brief to this court that based upon the original contact with the appellant and upon further investigation, probable cause existed to arrest the appellant for driving without a driver's license. His argument is premised entirely upon an invalid "stop."
 {¶ 28} As previously noted, the officers in the case at bar did not stop the appellant's vehicle. However, when the passenger attempted to leave the vehicle, *Page 11 
Officer Overdorf ordered him to remain in the vehicle. Upon further attempts of the passenger to exit, Officer Overdorf called for back-up to prevent the passenger from leaving the vehicle. Accordingly a reasonable, innocent person would not have felt free to leave or to end the encounter with the police officer. See, e.g., Florida v.Bostick (1991), 501 U.S. 429, 439, 111 S.Ct. 2382, 2388-2389,115 L.Ed.2d 389, 401-402. This show of authority and the subsequent submission to that authority constitute a seizure. California v. HodariD. (1991), 499 U.S. 621, 626, 111 S.Ct. 1547, 1550-1551,113 L.Ed.2d 690, 697.
 {¶ 29} Under the totality of the circumstances, we conclude that no reasonable, innocent person would have believed he or she was still free to leave or to end the contact initiated by the police officer when ordered to remain in the car followed by the summoning of an additional officer when the passenger attempted to continue on his way without complying or responding to the request of the officer. However, the seizure in the case at bar was no greater than that involved in an "investigative" stop, which is permitted when an officer possesses reasonable and articulable suspicion that a crime may have been committed. Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889.
 {¶ 30} The Ohio Supreme Court has identified certain specific and articulable facts that would justify an investigatory stop by way of reasonable suspicion, factors which fall into four general categories: (1) location; (2) the officer's experience, training or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances. Bobo, 37 Ohio St.3d at 178-79; State v. Andrews (1991),57 Ohio St.3d 86, 87-88. No single factor is dispositive; the decision must be viewed based on the *Page 12 
totality of the circumstances. Bobo, 37 Ohio St.3d at paragraph one of the syllabus; State v. White, 9th Dist. No. 05CA0060, 2006-Ohio-2966
at ¶ 16.
 {¶ 31} Location relates to whether the confrontation occurred in a reputed "high crime" area, an area of known drug activity, or perhaps a location under police surveillance. Bobo, 37 Ohio St.3d at 179 (heavy drug activity); Andrews, 57 Ohio St.3d at 88 (high crime). But, see,State v. Crosby (1991), 72 Ohio App.3d 148, syllabus (holding that individuals talking in or near a car, even when parked in an area known for drug activity, does not, without more, justify a search); State v.Davis (2000), 140 Ohio App.3d 659, 664-65 (stating that merely departing a house that is under surveillance is insufficient to justify a search);State v. White, supra at ¶ 17.
 {¶ 32} The officer's experience carries certain authority.Terry, 392 U.S. at 5 (officer had 39 years of experience);Bobo, 37 Ohio St.3d at 179 (20 years); Andrews, 57 Ohio St.3d at 88
(12.5 years). Alternatively, an officer may be aware of particular crime or danger in the vicinity, or have particularized knowledge of how crimes, such as drug transactions, occur in the area. Bobo,37 Ohio St.3d at 179; Davison at ¶ 9 (officer had previously arrested the suspect for a shooting incident, at which time the suspect had been armed); State v. White, supra at ¶ 18.
 {¶ 33} The suspect's conduct or appearance includes suspicious, inexplicable, or furtive movements, such as watching-out, ducking, hiding, fleeing, or discarding an object. Bobo, 37 Ohio St.3d at 178-79
(suspect ducking out of sight and other furtive movements);Andrews, 57 Ohio St.3d at 88 (suspect running through a dark courtyard threw an object to the ground); State v. Lee (1998),126 Ohio App.3d 147, 148 (cracked and burnt lips indicative of smoking crack cocaine);State v. White, supra at ¶ 19. *Page 13 
 {¶ 34} The surrounding circumstances include the time of day or night, because certain activities would ordinarily occur late at night or because weapons would be less obvious in the dark. Bobo,37 Ohio St.3d at 178-79 (night); Andrews, 57 Ohio St.3d at 88 (after nightfall, in a darkened area). Circumstances may also include an officer being out of a vehicle, away from protection, or without backup. Bobo,37 Ohio St.3d at 178-79; Andrews, 57 Ohio St.3d at 88; State v. White, supra at ¶ 20.
 {¶ 35} In the case at bar, the stop occurred at 9:20 p.m. in an area reputed to be the location of frequent drug sales. The officers had completed an investigation at the Pastime Inn when they noticed appellant's car. The car slowed as if to pull into a parking space, however, the passenger noticed the officers in their unmarked car. The appellant's car suddenly "changed course" and continued down the road. Sergeant Dittemore testified that he found this to be somewhat suspicious. The appellant's vehicle returned to the Pastime Inn and stopped in front of the bar. No one exited the vehicle at that time. After approximately two minutes Officer Overdorf approached the vehicle on foot. Sergeant Dittmore testified that the conduct of the occupants, made him suspicious, explaining:
 {¶ 36} "THE COURT: All right. If I understand what you're saying, the prior interaction really wouldn't have changed what happened here? In other words, if I understand what you're saying to the Court, any car that would have stopped in front of the Pastime and the occupants stayed in the car during that time of day or night would have been to you suspicious and not consistent with someone just being a patron of the bar, but more consistent with your prior observations that there may be a transaction that would take place or something is going on? If I understand that in and of itself- *Page 14 
 {¶ 37} "THE WITNESS: Correct.
 {¶ 38} "THE COURT: — you would have investigated?
 {¶ 39} "THE WITNESS: Correct.
 {¶ 40} "THE COURT: But what you're saying is the lead up to it made it a little more suspicious because of the fact that the vehicle when observing, or what appeared to you to be observing, you drove away, but then came back?
 {¶ 41} "THE WITNESS: Correct. They could have easily have parked in front of us." (T. at 18-19).
 {¶ 42} When Officer Overdorf approached the vehicle, the passenger attempted to exit the vehicle, even after the officer requested he remain inside the vehicle.
 {¶ 43} This Court finds that these facts and inferences satisfy the requirements of specific and articulable facts that would justify an investigatory stop by way of reasonable suspicion as enunciated inBobo, supra.
 {¶ 44} The "Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." (Internal quotations omitted.) Bobo, 37 Ohio St.3d at 180, quoting Adams v. Williams (1972), 47 U.S. 143, 145-46, 32 L.Ed.2d 612. The officers were justified in briefly stopping the appellant and his passenger in order to determine their identity or to maintain the status quo momentarily by requiring that they remain inside the vehicle while obtaining more information.
 {¶ 45} We find Officer Overdorfs and Sergeant Dittmore's contact with the appellant under the totality of the circumstances presented in this case does not amount *Page 15 
to an unjustifiable intrusion by the government on the privacy of an individual such as to constitute a violation of the Fourth Amendment to the United States Constitution. The conduct of the officers with the appellant was reasonable and prudent under the circumstances.
 {¶ 46} For the forgoing reasons, the judgment of the Stark County Court of Common Pleas, Ohio, is affirmed.
By Gwin, P.J., Farmer, J., and Wise, J., concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Ohio, is affirmed. Costs to appellant. *Page 1