OPINION *Page 2 
{¶ 1} Appellant Adrienne Klein appeals her conviction in the Licking County Court of Common Pleas for one count of possession of cocaine in violation of R.C. 2925.11(A)(C)(4)(a), a felony of the fifth degree; one count of possession of heroin, in violation of R.C. 2925.11(A)(C)(6)(a), a felony of the fifth degree; one count of aggravated possession of drugs (Codeine), a felony of the fifth degree, and possession of drug paraphernalia, in violation of R.C. 2925.14(C)(1), a misdemeanor of the fourth degree. The appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On May 26, 2006, Adrienne Klein was indicted on three felony drug counts and one count of misdemeanor possession of drug paraphernalia. Accompanying each of the felony counts was a forfeiture specification related to the seizure of United States currency.
 {¶ 3} On August 17, 2006, a motion to suppress evidence was filed on behalf of appellant. The following evidence was presented during the hearing on appellant's motion to suppress.
 {¶ 4} On July 13, 2005, Lieutenant Larry Brooks of the Hebron Police Department was on routine patrol. [Suppression Hearing Transcript at 12.] [Hereinafter referred to as "ST."]. Lieutenant Brooks was accompanied by an officer in training, Patrolman Brian Holmes. [Id.]. At approximately 1:00 PM, the officers observed a vehicle parked in a public park. [ST. at 12-13]. Outside the vehicle, the officer observed a man leaning against the passenger side of the car. [ST. at 13.] Lieutenant Brooks further testified that the male subject was standing next to a parked vehicle and that he *Page 3 
had difficulty standing, keeping his eyes open or understanding what was being said to him. [ST. at 17]. Lieutenant Brooks testified that the male subject picked up a cellular phone and pretended to talk to somebody in order to avoid speaking with him. [ST. at 17]. Lieutenant Brooks testified that he has training and experience to identify people under the influence of illegal drugs, as well as in the identification of controlled substances. [ST. at 7-11]. Lieutenant Brooks testified that the male subject appeared to be under the influence of drugs and/or alcohol. [ST. at 17].
 {¶ 5} When asked about the relationship between himself and the appellant, who was sitting in the parked vehicle, the male subject advised that she was his girlfriend. [ST. at 17]. Lieutenant Brooks testified that he approached the appellant, who was still sitting inside the car, and asked for her identification. [ST. at 18-19]. He further testified that she was acting strange while sitting in the car. [ST. at 19]. Lieutenant Brooks further explained that he had concerns about what she was doing with her hands, which were out of sight. [ST. at 20]. He testified that he asked the appellant to show her hands. [Id.]. He repeated this request several times before appellant complied. [ST. at 21]. Lieutenant Brooks testified that he observed appellant appear to throw something down on the floorboard of the vehicle " . . . I saw something get thrown on the floor . . . At that point, it appeared to be a needle. I wasn't a hundred percent sure at that point . . ." [ST. at 21]. Lieutenant Brooks explained that, due to a concern for his safety and the safety of his trainee, he asked appellant to exit the vehicle.
 {¶ 6} When appellant exited the vehicle she placed her purse upon the seat of the car. [ST. at 36]. Lieutenant Brooks was able to observe two hypodermic needles upon the floor in the area where he had seen appellant drop or throw something. He *Page 4 
requested permission to search the purse and the appellant consented responding, "Go ahead." [ST. at 23]. Lieutenant Brooks testified that he called another officer to assist in the search of the vehicle. While awaiting the arrival of additional officers, both "suspects" became ill and the squad was called. [ST. at 28-29].
 {¶ 7} After considering the arguments of counsel and the evidence presented, the trial court denied the motion by Judgment Entry filed September 28, 2006.
 {¶ 8} On October 31, 2006, appellant appeared before the trial court for purposes of a change of plea and sentencing hearing. At said hearing, appellant requested leave of the court to withdraw her previously entered pleas of Not Guilty and to enter pleas of No Contest to each count in the indictment. By agreement of the parties, no pleading with respect to the forfeiture specifications were made at this time. After the appropriate exchange with the appellant, the trial court accepted appellant's No Contest pleas and entered guilty findings with respect to each count. The court tabled the issue of the forfeiture specification to a "future time. . . ." [Plea and Sentencing Hearing T. at 5-16]. The trial court then placed the accused under community control supervision and imposed a $1,000.00 fine on each of the felony counts and a $250.00 fine on the misdemeanor count.
 {¶ 9} Notice of appellant's intent to appeal her conviction was filed on November 28, 2006. The record in the case was transmitted to this Court on January 5, 2007. On February 12, 2007, appellant filed a motion requesting a stay of the appeal and that the matter be remanded to the trial court to address the forfeiture specifications. This request was granted and the instant matter was returned to the trial *Page 5 
court for further proceedings. By agreement of the parties, the forfeiture specification was dismissed.
 {¶ 10} Appellant timely appealed and raises the following sole assignment of error for our consideration:
 {¶ 11} "I. THE TRIAL COURT COMMITTED HARMFUL ERROR IN DENYING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE."
 I. {¶ 12} In her sole assignment of error, appellant argues that the trial court erred in denying her motion to suppress and in finding that Lieutenant Brooks had a reasonable suspicion to stop appellant and request she produce identification. We disagree.
 {¶ 13} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. State v. Curry (1994), 95 Ohio App.3d 93,96; State v. Claytor (1993), 85 Ohio App.3d 623, 627; State v.Guysinger (1993), 86 Ohio App.3d 592. As the United States Supreme Court held in Ornelas v. U.S. (1996), 517 U.S. 690, 116 S.Ct. 1657, 1663,134 L.Ed.2d 911, " . . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." *Page 6 
 {¶ 14} In the instant appeal, appellant's challenge of the trial court's ruling on his motion to suppress is based on the third method. Accordingly, this court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in this case.
 {¶ 15} In a motion to suppress, the trial court assumes the role of trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. Guysinger, supra, at 594 (citations omitted). Accordingly, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Id., citing State v. Fausnaugh (Apr. 30, 1992), Ross App. No. 1778.
 {¶ 16} The question in the case at bar is whether the contact of the police officers with appellant violated the appellant's Fourth Amendment rights.
 {¶ 17} Contact between police officers and the public can be characterized in three different ways. State v. Richardson, 5th Dist. No. 2004CA00205, 2005-Ohio-554 at ¶ 23-27. The first is contact initiated by a police officer for purposes of investigation. "[M]erely approaching an individual on the street or in another public place [,]" seeking to ask questions for voluntary, uncoerced responses, does not violate the Fourth Amendment. UnitedStates v. Flowers (6th Cir.1990), 909 F.2d 145, 147. The United State Supreme Court "[has] held repeatedly that mere police questioning does not constitute a seizure." Florida v. Bostick, 501 U.S. 429, 434,111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); see also INS v. Delgado,466 U.S. 210, 212, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage."Bostick, *Page 7 
supra, at 434-435, 111 S.Ct. 2382 (citations omitted). The person approached, however, need not answer any question put to him, and may continue on his way. Florida v. Royer (1983), 460 U .S. 491, 497-98. Moreover, he may not be detained even momentarily for his refusal to listen or answer. Id.
 {¶ 18} The second type of contact is generally referred to as "aTerry stop" and is predicated upon reasonable suspicion.Richardson, supra; Flowers, 909 F.2d at 147; See Terry v. Ohio (1968),392 U.S. 1. This temporary detention, although a seizure, does not violate the Fourth Amendment. Under the Terry doctrine, "certain seizures are justifiable . . . if there is articulable suspicion that a person has committed or is about to commit a crime" Florida,460 U.S. at 498. In holding that the police officer's actions were reasonable under the Fourth Amendment, Justice Rehnquist provided the following discussion of the holding in Terry: "In Terry this Court recognized that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. TheFourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.Adams v. Williams (1972), 407 U.S. 143, 145-47, 92 S.Ct. 1921, 1923-24,32 L.Ed.2d 612. *Page 8 
 {¶ 19} The Fourth Amendment requires that officers have had a "reasonable fear for his own or others' safety" before frisking.Terry v. Ohio (1968), 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889. Specifically, "[t]he officer . . . must be able to articulate something more than an `inchoate and unparticularized suspicion or hunch.' "UnitedStates v. Sokolow (1989), 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1
(quoting Terry, 392 U.S. at 27, 88 S.Ct. 1868). Whether that standard is met must be determined "`from the standpoint of an objectively reasonable police officer," ` without reference to "the actual motivations of the individual officers involved." United States v.Hill (D.C. Cir.1997), 131 F .3d 1056, 1059 (quoting Ornelas v.United States (1996), 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911).
 {¶ 20} The third type of contact arises when an officer has "probable cause to believe a crime has been committed and the person stopped committed it." Richardson, supra; Flowers, 909 F. 2d at 147. A warrantless arrest is constitutionally valid if: "[a]t the moment the arrest was made, the officers had probable cause to make it-whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the * * * [individual] had committed or was committing an offense." State v. Heston (1972),29 Ohio St.2d 152, 155-156, 280 N.E.2d 376, quoting Beck v. Ohio (1964),379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142. "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." Ornelas v. United States (1996), *Page 9 517 U.S. 690, 696, 116 S.Ct. 1657, 1661-1162. A police officer may draw inferences based on his own experience in deciding whether probable cause exists. See, e.g., United States v. Ortiz (1975), 422 U.S. 891,897, 95 S.Ct. 2585, 2589.
 {¶ 21} In Florida v. Bostick (1991), 501 U.S. 429, 111 S .Ct. 2382, the United States Supreme Court reiterated that "a consensual encounter does not trigger Fourth Amendment scrutiny. See Terry v. Ohio,392 U.S. 1, 19, n. 16, 88 S.Ct. 1868, 1879, n. 16, 20 L. Ed. 2d 889. Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions, Florida v. Rodriguez,469 U.S. 1, 5-6, 105 S.Ct. 308, 310-311, 83 L.Ed.2d 165, ask to examine identification, INS v. Delgado, 466 U.S. 210, 216, 104 S.Ct. 1758,1762-1763, 80 L.Ed.2d 247, and request consent to search luggage,Florida v. Royer, 460 U.S. 491, 501, 103 S.Ct. 1319, 1326,75 L.Ed.2d 229, provided they do not convey a message that compliance with their requests is required." 501 U.S. at 434-35, 111 S.Ct. at 2386. The courts in Ohio have taken a similar approach: "[b]ecause the vehicle was parked, appellant was not subjected to a seizure per se as happens when a motorist is stopped in transit by a police officer. Numerous Ohio courts . . . have held that a police approach and encounter with a stationary vehicle is consensual in nature, thereby making theFourth Amendment inapplicable. See, e.g., State v. Welz (Dec. 9, 1994), Lake App. No. 93-L-137, unreported; Cuyahoga Falls v. Sandstrom (June 21, 1995), Summit App. No. 17000, unreported; State v. Kiggans (Nov. 20, 1995), Stark App. No. 1995CA00157, unreported; State v. Osborne (Dec. 13, 1995), Montgomery App. No. CA 15151, unreported." State v. Lott (Dec. 26, 1997), 11th Dist. No. 96-A-0011. *Page 10 
 {¶ 22} Appellant does not contest that she voluntarily consented to the search of her purse; her argument is premised entirely upon an invalid "stop."
 {¶ 23} As previously noted, the officers in the case at bar did not stop the vehicle in which the appellant was seated. Accordingly, the officers' approach and encounter with a stationary vehicle is consensual in nature, thereby making the Fourth Amendment inapplicable. The officer's request for appellant's identification was permissible.INS v. Delgado, 466 U.S. 210, 216, 104 S.Ct. 1758, 1762-1763,80 L.Ed.2d 247. The officer's request for consent to search appellant's purse was likewise permissible. Florida v. Royer, 460 U.S. 491, 501,103 S.Ct. 1319, 1326, 75 L.Ed.2d 229.
 {¶ 24} In addition after the officer observed appellant drop or throw the hypodermic needles to the floor of the car, the officer's actions would be justified as a Terry-type detention. The seizure in the case at bar was no greater than that involved in an "investigative" stop, which is permitted when an officer possesses reasonable and articulable suspicion that a crime may have been committed. Terry v. Ohio (1968),392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.
 {¶ 25} The Ohio Supreme Court has identified certain specific and articulable facts that would justify an investigatory stop by way of reasonable suspicion. The factors fall into four general categories: (1) location; (2) the officer's experience, training or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances.Bobo, 37 Ohio St.3d at 178-79; State v. Andrews (1991),57 Ohio St.3d 86, 87-88. No single factor is dispositive; the decision must be viewed based on the totality of the circumstances. Bobo, 37 Ohio St.3d at paragraph one of the syllabus; State v. White, 9th Dist. No. 05CA0060,2006-Ohio-2966 at ¶ 16. *Page 11 
 {¶ 26} The officer's experience carries certain authority.Terry, 392 U.S. at 5 (officer had 39 years of experience);Bobo, 37 Ohio St.3d at 179 (20 years); Andrews, 57 Ohio St.3d at 88
(12.5 years). Alternatively, an officer may be aware of particular crime or danger in the vicinity, or have particularized knowledge of how crimes, such as drug transactions, occur in the area. Bobo,37 Ohio St.3d at 179; Davison at ¶ 9 (officer had previously arrested the suspect for a shooting incident, at which time the suspect had been armed); State v. White, supra at ¶ 18.
 {¶ 27} The suspect's conduct or appearance includes suspicious, inexplicable, or furtive movements, such as watching-out, ducking, hiding, fleeing, or discarding an object. Bobo, 37 Ohio St.3d at 178-79
(suspect ducking out of sight and other furtive movements);Andrews, 57 Ohio St.3d at 88 (suspect running through a dark courtyard threw an object to the ground); State v. Lee (1998),126 Ohio App.3d 147, 148 (cracked and burnt lips indicative of smoking crack cocaine);State v. White, supra at ¶ 19.
 {¶ 28} In the case at bar Lieutenant Brooks is a thirteen year veteran. [ST. at 6]. Lieutenant Brooks testified to his training and experience in drug and alcohol interdiction. Further he testified as to his training and experience in the detection of drug paraphernalia, specifically hypodermic needles. [Id. at 9]. Lieutenant Brooks testified that he approached the male suspect to inquire if he [the suspect] was okay because he "was slouching over really bad; had a hard time standing up straight; eyes were almost completely shut; and responses to my questions were even hard to understand." [ST. at 17]. The male suspect told the Lieutenant that the person seated inside the car was his girlfriend. [ST. at 18]. After receiving the appellant's identification, the appellant continued to put her hands down to where the officer was unable to *Page 12 
observe them. Upon requesting several times that she keep her hands in view, Lieutenant Brooks testified that he saw something get thrown to the floor: "at that point it appeared to be a needle. I wasn't a hundred percent sure at that point, so for my own safety I asked her if she would please exit the vehicle." [T. at 21]. After appellant exited the car Lieutenant Brooks was able to clearly observe "needles on the floor of the car." [ST. at 22]. Specifically, two hypodermic needles. [ST. at 23].
 {¶ 29} The conduct of the male suspect, the appellant and the Lieutenant's experience are specific and articulable facts that would justify an investigatory stop by way of reasonable suspicion.
 {¶ 30} We find Lieutenant Brooks' contact with the appellant under the totality of the circumstances presented in this case does not amount to an unjustifiable intrusion by the government on the privacy of an individual such as to constitute a violation of the Fourth Amendment to the United States Constitution. The conduct of the officer with the appellant was reasonable and prudent under the circumstances. *Page 13 
 {¶ 31} For the forgoing reasons, t Common Pleas, Ohio, is affirmed.
 Gwin, P.J., Hoffman, J., and Delaney, J., concur. *Page 14 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Court of Common Pleas, Ohio, is affirmed. Costs to appellant. *Page 1