[Cite as *State v. Robinson*, 2012-Ohio-2428.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | | |

| STATE OF OHIO | | C.A. No. 10CA0022 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| MAURICE D. ROBINSON | | COURT OF COMMON PLEAS COUNTY OF WAYNE, OHIO |
| Appellant | | CASE No. 10-CR-0341 |

DECISION AND JOURNAL ENTRY

Dated: June 4, 2012

MOORE, Judge.

{¶1}  Appellant, Maurice Robinson, appeals the judgment of the Wayne County Court of Common Pleas.  We reverse.

I.

{¶2}  On July 25, 2010, Officer Quinn McConnell of the City of Wooster Police Department initiated a traffic stop on Maurice Robinson which ultimately led to the officer's search of Robinson and the discovery of cash in Robinson's pockets and of two bags of alleged cocaine in Robinson's sock.  The Wayne County Grand Jury indicted Robinson, charging him with two counts of drug possession, in violation of R.C. 2925.11(A), with one of these counts constituting a second degree felony, and the other constituting a fourth degree felony.

{¶3}  Robinson moved to suppress evidence, the discovery of which he argued resulted from an illegal traffic stop and an illegal search.  After holding an evidentiary hearing, the trial court denied his motion.  Robinson subsequently amended his plea to no contest, and the trial

court found him guilty on both counts. On April 7, 2011, the trial court sentenced Robinson to two years of incarceration on the second degree felony and twelve months of incarceration on the fourth degree felony, to be served concurrently.

{¶4} Robinson timely filed a notice of appeal and presents one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED WHEN IT DENIED [ROBINSON]'S MOTION TO SUPPRESS EVIDENCE IN VIOLATION OF HIS RIGHT AGAINST UNREASONABLE SEARCH AND SEIZURE AS GUARANTEED BY THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION.

{¶5} In his sole assignment of error, Robinson argues that the trial court erred in denying his motion to suppress. We agree.

Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.) *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶6} After careful review of the record, we accept the trial court's findings of fact set forth below, as they are supported by competent, credible evidence. *See id.* On July 25, 2010, Officer McConnell observed a truck with out-of-town plates parked at Wooster Towers, which is located in an area known for drug trafficking. The officer learned that the truck was registered to Robinson, who had a prior drug conviction. When the officer saw Robinson leave Wooster Towers driving his truck, the officer followed and observed Robinson commit two traffic

violations. Officer McConnell stopped Robinson, and called for the K9 unit to come to the scene to perform a drug sniff while Officer McConnell prepared the citation. Robinson explained to the officer that he was leaving Wooster Towers after dropping off an individual, and he was driving home to Alliance, Ohio. Officer McConnell was familiar with the individual referenced by Robinson as one involved in illegal drug activity.

{¶7} The K9 officer arrived, and Robinson became agitated and argumentative with the K9 officer when the officer told him he intended to conduct a canine sniff. Robinson would not respond to the officers' questions of whether drugs were in the vehicle. During the canine sniff, the canine alerted at the driver's door, and Officer McConnell asked Robinson to exit the vehicle and handcuffed him to prevent him from attempting to flee or to destroy contraband. Robinson denied having any drugs. Officer McConnell then began a pat-down search of Robinson while the K9 officer searched the vehicle. Officer McConnell discovered a wad of money in Robinson's pocket. Shortly after the officer discovered the money, the K9 officer advised Officer McConnell that he had discovered loose marijuana on the floor of the vehicle. Officer McConnell requested that Robinson sit on the bumper of the cruiser and remove his shoes, and Robinson complied. The officers then discovered two bags of cocaine in Robinson's sock and placed Robinson under arrest.

{¶8} On appeal, Robinson argues that the evidence obtained from the search of his person should be suppressed as it was obtained through an unjustified search of his person, to which he did not consent. The State contends that the trial court did not err in denying the motion to suppress because Robinson consented to the search, the search was a justified pat-down search pursuant to *Terry v. Ohio*, and the search was a proper search incident to arrest.

Exclusionary Rule

{¶9} The Fourth Amendment to the United States Constitution and Article I, Section 14, of the Ohio Constitution prohibit law enforcement from conducting unreasonable and warrantless searches and seizures. "Warrantless searches are per se unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions. The state has the burden of establishing the application of one of the exceptions to this rule designating warrantless searches as per se unreasonable." (Internal citations and quotations omitted.) *State v. Kessler*, 53 Ohio St.2d 204, 207 (1978). Courts are required to exclude evidence obtained by means of searches and seizures that are found to violate the Fourth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 657 (1961).

{¶10} A police-initiated stop of an automobile is a seizure under the Fourth Amendment and falls within the purview of *Terry v. Ohio*, 392 U.S. 1 (1968). *See Delaware v. Prouse*, 440 U.S. 648, 653, 663 (1979). Therefore, officers must possess a reasonable suspicion of criminal activity in order to justify a traffic stop. *See Terry*, 392 U.S. at 21. Here, on appeal Robinson does not challenge the justification for his traffic stop or the canine sniff. Instead, Robinson challenges the justification for the search of his person. The trial court concluded that "once a trained drug dog alerts to the odor of drugs from a lawfully detained vehicle, an officer has probable cause to search the vehicle for contraband. The search of [Robinson]'s vehicle and person were justified." Thus, it appears that the trial court determined that a positive canine alert alone justified the search of the vehicle and Robinson. We disagree, as, in *State v. Kay*, we declined to follow the precedent of the Tenth Circuit, which holds that "when a drug dog alerts on a vehicle, it provides probable cause not only to search the vehicle, but probable cause to arrest the occupants." *State v. Kay*, 9th Dist. No. 09CA0018, 2009-Ohio-4801, ¶ 20. Therefore in regard to the arrest or full search of the occupant of a vehicle, the canine alert alone does not

provide the requisite level of probable cause. *See id.* Thus, in the facts before us, the canine alert did not justify the full search of Robinson's person.

**{¶11}** However, the trial court further found that "[Robinson] consented to the search by removing his shoes when the officer asked him if he would be willing to remove his shoes." In addition, the State contends that the search of Robinson's person was justified as a *Terry* pat-down search and as a search incident to arrest. Because Robinson does not now dispute the justification for, nor the duration of, the traffic stop, we will begin our discussion with the canine sniff.

Actions Taken Upon Canine Alert

**{¶12}** Here, Officer McConnell testified that, during the canine sniff, Robinson was arguing with the officers about whether or not the police had the legal authority to conduct the sniff without probable cause. In addition, Robinson continued to remove his hands from the steering wheel after the officer repeatedly told him to keep his hands on the wheel, and then Robinson attempted to open the car door. In response, the officer stepped into the vehicle door, pushed it closed, and ordered him to stay in the vehicle. Thereafter, the officer noted that he had Robinson's full compliance. After the canine alerted, Officer McConnell ordered Robinson to exit his vehicle and placed him in handcuffs.

**{¶13}** During a valid traffic stop, officers may order the occupants of a vehicle out of the vehicle pending completion of the stop without violating the Fourth Amendment. *See Maryland v. Wilson*, 519 U.S. 408 (1997). Officer McConnell testified that, after Robinson exited the vehicle, the officer placed him in handcuffs and told him "he was not under arrest, however he was being taken into custody." The officer further explained, "I did so, again that's not something that's typically done, um, I've only done that probably on a handful of occasions as

well, but due to the circumstances of his behavior and the nature of the traffic stop I just wanted to keep him from attempting to reach for a weapon, attempt to destroy drugs or flee at that time." In the trial court's findings of fact, it determined that Robinson "was handcuffed to prevent him from attempting to flee or destroy any contraband."

{¶14} This Court has held that "*Terry* does recognize that the police are entitled to take reasonable measures to ensure their own safety, including handcuffing should the situation warrant it. The facts and circumstances must warrant the use of handcuffs; without an element of risk, the officer safety rationale will not apply." (Citations and quotations omitted.) *State v. Mills*, 9th Dist. Nos. 02CA0037-M, 02CA0038-M, 2002-Ohio-7323, ¶ 11. Here, the trial court determined that Robinson had become "argumentative and agitated" during the canine sniff. Officer McConnell testified that Robinson had attempted to exit his vehicle after the officer had instructed him to remain inside the car. In addition, Robinson had just left an area known for drug trafficking, the canine had alerted prior to the officer placing Robinson in handcuffs, and the officer testified that he was concerned that Robinson may attempt to reach for a weapon after he was ordered to exit the vehicle. Although, as set forth above, the canine alert alone does not establish probable cause sufficient to fully search or arrest the occupant of a vehicle, it is one factor upon which an officer may base his reasonable suspicion that the individual poses a safety risk during an investigatory stop. *See Alabama v. White*, 496 U.S. 325, 330 (1990) ("[R]easonable suspicion can arise from information that is less reliable than that required to show probable cause."). Based upon these facts, the use of handcuffs during the stop did not violate Robinson's Fourth Amendment rights, as the totality of the circumstances here warranted the use of handcuffs for the officers' safety. *See Mills* at ¶ 11.

*Terry* Search

**{¶15}** After Robinson had exited the vehicle and had been handcuffed, Officer McConnell testified that Robinson denied having any contraband and told the officers that they could search him. Officer McConnell began to search Robinson and felt "a wad of money" in Robinson's pocket. The officer then began to remove the money, but let go of the money when Robinson clarified that he was authorizing only a "*Terry* pat[-]down."

**{¶16}** Pursuant to the Supreme Court's holding in *Terry*, an officer is justified in conducting a limited pat down search of an individual's outer clothing for weapons during an investigatory stop, if the officer has a "reasonable suspicion, [based on the totality of the circumstances], that the individual whose behavior he is investigating at close range may be armed and dangerous." *State v. Andrews*, 57 Ohio St.3d 86, 89 (1991), citing *Terry*, 392 U.S. at 27; *see also Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993), quoting *Terry*, 392 U.S. at 26 ("[A] protective search—permitted without a warrant and on the basis of reasonable suspicion less than probable cause—must be strictly 'limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.'").

**{¶17}** Here, the officers had a reasonable, objective basis to reasonably suspect that Robinson might be armed and dangerous. As set forth above, Robinson was confrontational and noncompliant with the officers during the canine sniff. Further, Officer McConnell was aware that Robinson was traveling from an area known for drug trafficking, that Robinson there had been visiting an individual known for engaging in drug activity, that Robinson had a previous drug-related conviction, and that the canine had alerted to Robinson's vehicle. In addition, Officer McConnell specifically testified that due to the nature and circumstances of the stop, he was concerned that Robinson would reach for a weapon. Thus based upon the totality of the

circumstances, the *Terry* pat-down did not did violate Robinson's Fourth Amendment rights. Because the officers were justified in conducting a *Terry* search, we make no determination as to whether Robinson voluntarily consented to a "*Terry* pat[-]down."

Search Inside Robinson's Pockets

**{¶18}** When the K9 officer advised Officer McConnell that he had found loose marijuana on the vehicle's floor, Officer McConnell removed the cash that he had felt during the pat-down from Robinson's pocket. He then searched within Robinson's other pockets, removing more money.

**{¶19}** A *Terry* search is limited in scope to a pat-down search of an individual's outer clothing for weapons. *See State v. Prince*, 9th Dist. No. 21130, 2003-Ohio-723, ¶ 12. Thus, the search inside an individual's pockets is not permissible as part of a *Terry* search. *See id.* However, if during the course of a *Terry* search, an officer feels "an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." *Minnesota v. Dickerson*, 508 U.S. 366, 370, 375-376 (1993) (describing the "plain-feel" exception to the warrant requirement). In addition, the Ohio Supreme Court has held that during a pat-down, if the officer detects an object that "through his or her sense of touch, reasonably believes could be a weapon, the officer may seize the object[.]" *State v. Evans*, 67 Ohio St.3d 405 (1993), paragraph two of the syllabus.

**{¶20}** Here, the testimony is unclear as to whether the nature of the "wad of money" was apparent by touch during the *Terry* search, or whether the officer reasonably believed the "wad" in Robinson's pocket to be a weapon. Moreover, the record does not indicate that Officer

McConnell at any point subjectively believed that the "wad" in Robinson's pocket was a weapon. Therefore, the seizure of the money from Robinson's pockets is not justified by the *Terry* search or the plain feel doctrine. *See Maumee v. Weisner*, 87 Ohio St.3d 295, 297 (1999) ("Generally, at a suppression hearing, the state bears the burden of proving that a warrantless search or seizure meets Fourth Amendment standards of reasonableness.")

{¶21} However, the State responds that the search of Robinson's person was consensual. A search by law enforcement does not implicate the Fourth Amendment when officers have obtained a voluntary consent to search. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *State v. Comen*, 50 Ohio St.3d 206, 211 (1990).

{¶22} Here, Officer McConnell testified that, after officers had placed Robinson in handcuffs, Robinson denied having contraband and told the officers to search him. However, when Officer McConnell began to remove the money from Robinson's pocket, Robinson instructed the officers that he was authorizing a "*Terry* pat[-]down" only. "When law enforcement officers rely upon consent as the basis for a warrantless search, the scope of the consent given determines the permissible scope of the search." *United States v. Gant*, 112 F.3d 239, 242 (6th Cir.1997). Because the search inside the pockets exceeded the scope of a *Terry* search, as set forth above, we must conclude that Robinson did not voluntarily consent to the search of his person, at least as to the extent that this consent included the search of his pockets.

{¶23} The State contends that, even if Robinson did not consent to the search of his person, the search was justified as a search incident to arrest. "[A] full search of the person incident to a lawful custodial arrest is not only an exception to the warrant requirement of the Fourth Amendment but is also a 'reasonable' search under that amendment." *State v. Mathews*, 46 Ohio St.2d 72, 74 (1976), citing *United States v. Robinson*, 414 U.S. 218 (1973). "Pursuant

to their authority to conduct a search incident to arrest, police are authorized to conduct a full search of the arrestee's person and the area within his immediate control[.]" *State v. Myers*, 119 Ohio App.3d 376, 380 (2d Dist.1997), citing *Chimel v. California*, 395 U.S. 752 (1969). Moreover, "[w]here the police officer has probable cause to arrest independent of the items obtained in the search, but does not arrest until shortly after the search, the search is not offensive to the Fourth Amendment to the United States Constitution." *State v. Bing*, 134 Ohio App.3d 444, 447-48 (9th Dist.1999), citing *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980).

**{¶24}** Here, the State contends that the search of Robinson was justified as a valid search incident to arrest once the officers discovered marijuana in Robinson's vehicle. However, in order to justify a search as one incident to arrest, there must be probable cause to arrest. *State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, syllabus. The test for probable cause to arrest without a warrant is whether "the facts and circumstances known to the officer warrant a prudent man in believing the offense has been committed." *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 73, quoting *Henry v. United States*, 361 U.S. 98, 102 (1959). The offense of possession of marijuana in an amount less than 100 grams constitutes a minor misdemeanor. R.C. 2925.11(C)(3)(a), (b). Absent proof of a valid statutory exception, an arrest for a minor misdemeanor is precluded in Ohio, and any evidence obtained in a search incident to a prohibited minor misdemeanor arrest is subject to the exclusionary rule. R.C. 2935.26; *Brown* at ¶ 25.

**{¶25}** Here, Officer McConnell reported that the K-9 officer indicated to him that there was a significant amount of loose marijuana discovered. On cross-examination, the officer stated "Um, I don't know if they said large amount. They said there, there was quite a bit. I, I used large amount in my report. I can't say if they used the uh, that exact, that exact phrase, but it was, the way they indicated it to me it sounded like it was pretty obvious and there was quite a

bit in there." However, Officer McConnell noted that the K9 officer's report stated that he discovered only a small amount of loose marijuana on the floor of the vehicle.

{¶26} It is unclear from the officer's testimony whether he reasonably believed that the amount of marijuana discovered was sufficient to allow an arrest of Robinson. Nothing in the record indicates the quantity of marijuana discovered by the officers, and no evidence indicates that the marijuana was confiscated by the police. Further, there is no indication that a valid exception to the prohibition for arrests for minor misdemeanors applied in this case. Accordingly, we cannot determine that the full search of Robinson was justified as a valid search incident to arrest.

{¶27} Because we see no exception to the warrant requirement justifying the search of Robinson's pockets, and because we have determined that Robinson did not consent to the search of his pockets, the search violated Robinson's Fourth Amendment rights. Accordingly, the trial court erred in failing to exclude the evidence obtained from Robinson's pockets.

Search of Robinson's Socks

{¶28} After searching Robinson's pockets, Officer McConnell then requested Robinson to remove his shoes. The trial court determined that Robinson then consented to the search of his sock "by removing his shoes when the officer asked him if he would be willing to remove his shoes."

{¶29} The state has the burden of proving that the necessary consent to a warrantless search was obtained and that the consent was voluntarily given. *Florida v. Royer*, 460 U.S. 491, 497 (1983). "This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *Bumper v. N. Carolina*, 391 U.S. 543, 548-49 (1968). Consent to search is voluntarily given where a reasonable person would believe that he or she had the

freedom to refuse a request to search. *State v. Robinette*, 80 Ohio St.3d 234, 245-246 (1997). Voluntariness is a question of fact to be judged by the totality of the circumstances. *Id.*, citing *Bustamonte*, 412 U.S. at 245.

{¶30} Here, the evidence weighs against the voluntariness of consent to search Robinson's socks. First, as set forth above, Officer McConnell had instructed Robinson to comply with orders during the canine sniff. The officer then ordered Robinson out of the vehicle and handcuffed him. At the time that Robinson took off his shoes, the officers had just previously exceeded the scope of his purported consent to a pat-down search by searching the interior of his pockets. Under these circumstances, the weight of the evidence indicates that Robinson's act of removing his shoes, rather than providing voluntary consent to search his socks, demonstrated that Robinson was acquiescing to the officer's claim of authority. *See State v. Polansky*, 8th Dist. No. 45402, 1983 WL 3012 (May 19, 1983) (where guards detained defendant awaiting police arrival and instructed defendant to empty his pockets, defendant's compliance with the guard's instruction was insufficient to establish voluntary consent to search pockets.) However, as set forth above relative to our discussion of the search of Robinson's pockets, the State argues that the full search of Robinson's person was justified as a valid search incident to arrest. This argument must again fail as it pertains to the search of Robinson's socks. The testimony indicates no further facts which, between the time of the discovery of the marijuana and the search of Robinson's socks, would warrant a reasonable officer to believe that Robinson had committed an arrestable offense.

{¶31} The State further argues that the search of Robinson's socks was justified by *Terry*. However, there is no indication from the record that the officers performed a pat down of the sock or whether the officers reasonably believed that the item within the sock was a weapon.

Instead, Officer McConnell testified that he observed "a large bulge on the inside of [Robinson's] right sock. It almost appeared if you could say like a tumor. It was a big bulge sticking from around the ankle area of the sock. It was clear that it wasn't [ ] part of his anatomy, [ ] that it was something concealed in his sock." Based upon Officer McConnell's testimony, we conclude that there was no indication that the officer was able to detect any incriminating character of the bulge in Robinson's sock by touch or sight. Thus, the search inside Robinson's sock was not justified by the plain feel doctrine. *See State v. Groves*, 156 Ohio App.3d 205, 2004-Ohio-662, ¶ 44 (2d Dist.2004) (without any testimony indicating that officers had a reasonable belief that the item felt was contraband or a weapon, search within sock not justified under Terry and the plain feel doctrine), and *see State v. Morton*, 9th Dist. No. 25117, 2010-Ohio-3582, ¶ 20 (application of the plain feel doctrine is "limited to detecting the object's incriminating character by merely patting the exterior clothing without manipulating the object to identify it as contraband"). Further, there is no indication from his testimony that Officer McConnell believed that a weapon was creating the bulge in Robinson's sock. *See Evans*, 67 Ohio St.3d at paragraph two of the syllabus. Instead, Officer McConnell testified that he noticed the "bulge" in Robinson's sock, where he believed Robinson concealed "something." Officer McConnell's belief that Robinson concealed "something" in his sock is insufficient to establish that the officer reasonably believed that Robinson had there concealed either a weapon or contraband.

{¶32} Accordingly, the search of Robinson's pockets and sock was not justified under the Fourth Amendment, and the weight of the evidence demonstrates that Robinson did not voluntarily consent to these searches. Therefore, the trial court erred in failing to suppress the evidence seized from these searches, namely: the money seized from Robinson's pockets and the

baggies of purported crack and powder cocaine seized from his sock. Robinson's sole assignment of error is sustained, and the judgment of the Wayne County Court of Common Pleas is reversed.

Judgment reversed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

CARLA MOORE
FOR THE COURT

BELFANCE, P. J.
CARR, J.
CONCUR.

APPEARANCES:

EUGENE O'BYRNE, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and LATECIA E. WILES, Assistant Prosecuting Attorney, for Appellee.