[Cite as *State v. Farrey*, 2013-Ohio-4263.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.    26703 |
|     Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| TRAMANNE M. FARREY | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
|     Appellant | CASE No.    CR 12 03 0918 |

DECISION AND JOURNAL ENTRY

Dated: September 30, 2013

---

WHITMORE, Judge.

{¶1} Defendant-Appellant, Tramanne Farrey, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.

I

{¶2} Officer Brian Nida and Detective Ted Male were working the Street Narcotics Uniform Detail ("SNUD") on March 28, 2012. The officers were in the area of Maxen Drive and Biruta Street responding to drug complaints when they noticed two cars parked in an empty lot. The officers noticed Farrey, who was standing at the front of the cars, turn and look at them, put his hand inside his right front pants pocket, walk hurriedly to the back of the cars, bend over, and make a throwing motion as if throwing something underneath the vehicle. Farrey then walked back to the front of the cars and began yelling that the officers were on private property as they pulled into the parking lot.

**{¶3}** Officer Nida approached Farrey to frisk him for weapons and noticed a "baggy of marijuana partially protruding from his right [pants] pocket." Upon discovering the marijuana, Detective Male detained the two other individuals that were on scene. Detective Male then went to search under the rear of the car in the area where they had witnessed Farrey make the throwing motion. Detective Male discovered a bag of heroin and a bag of crack cocaine.

**{¶4}** Farrey was indicted on: (1) one count of possession of heroin, in violation of R.C. 2925.11(A)/(C)(6), a felony of the fifth degree; (2) one count of possession of cocaine, in violation of R.C. 2925.11(A)/(C)(4), a felony of the fifth degree; and (3) one count of possession of marijuana, in violation of R.C. 2925.11(A)/(C)(3), a minor misdemeanor. Additionally, Farrey's indictment contained two criminal forfeiture specifications for $226 in cash that the police discovered in Farrey's pocket. A jury found Farrey guilty of possession of heroin and cocaine and found that the cash was subject to forfeiture. The court found Farrey guilty of possession of marijuana. Farrey was sentenced to six months in jail and a $100 fine. Farrey now appeals and raises two assignments of error for our review.

II

Assignment of Error Number One

FARREY'S CONVICTION OUGHT TO BE REVERSED BECAUSE HE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED HIM BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

**{¶5}** In his first assignment of error, Farrey argues that the totality of the circumstances did not permit the police to conduct a *Terry* stop and that his counsel was ineffective for failing to file a motion to suppress the evidence discovered as a result of the unlawful search.

**{¶6}** To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's performance was deficient to the extent that "counsel was not functioning as

the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that but for counsel's deficient performance the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Accord State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus.

{¶7} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures. *Accord* Ohio Constitution, Article I, Section 14. "For a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant." *State v. Moore*, 90 Ohio St.3d 47, 49 (2000). Searches conducted without a warrant are presumptively unreasonable, unless an exception to the warrant requirement applies. *See Payton v. New York*, 445 U.S. 573, 586 (1980).

{¶8} An investigatory stop, or *Terry* stop, is one such exception to the warrant requirement. *Terry v. Ohio*, 392 U.S. 1 (1968). For an investigatory stop to be justified, an officer must be able to point to "specific and articulable facts, which taken together with rational inferences from those facts," support a reasonable suspicion of criminal activity. *Id.* at 21. *United States v. Cortez*, 449 U.S. 411, 417 (1981).

> The Ohio Supreme Court has identified certain specific and articulable facts that would justify an investigatory stop by way of reasonable suspicion, factors which fall into four general categories: (1) location; (2) the officer's experience, training or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances. No single factor is dispositive; the decision must be viewed based on the totality of the circumstances.

(Internal citation omitted.) *State v. White*, 9th Dist. Wayne No. 05CA0060, 2006-Ohio-2966, ¶ 16, citing *State v. Bobo*, 37 Ohio St.3d 177, 178-180 (1988).

**Reasonable Suspicion**

{¶9} Farrey argues that his counsel was ineffective for failing to file a motion to suppress because the officers did not have reasonable suspicion to conduct a *Terry* stop. We disagree.

{¶10} Detective Ted Male has been with the Akron Police Department for nineteen years, the past twelve of which he has spent with the SNUD. Officer Nida has been with the Akron Police Department for fifteen years and has been assigned to SNUD for the past four years.

{¶11} On March 28, 2012, Officer Nida and Detective Male were in the area of Maxen Drive and Biruta Street "[c]hecking [on] drug complaints." The officers were in a marked police cruiser. Both officers testified that, as they turned the corner from Maxen Drive onto Biruta Street, they noticed two cars parked in an otherwise empty lot. The officers observed three individuals. One man was standing, facing the officers, leaning against the inside of the open driver's door of the first car. Another man was sitting in the driver's seat of the second car. Finally, Farrey was standing at the front of the cars, facing away from the officers. Both officers testified that they watched Farrey turn and look at them, reach into his right front pants pocket, walk quickly to the back of one of the cars, bend down, and make a throwing motion. Farrey then quickly returned to the front of the cars and began yelling at the officers as they pulled into the parking lot.

{¶12} Based on their observations of Farrey's actions, the officers pulled into the parking lot to inquire. Officer Nida testified that as he approached Farrey to conduct a pat down for weapons, he observed a "baggy of marijuana partially protruding from [Farrey's] right pocket."

{¶13} Officer Nida and Detective Male are experienced in handling drug related crimes. They were in the area because there had been complaints about drug activity. These factors combined with their observations of Farrey's movements and the "baggy of marijuana" hanging from his right pants pocket, provided the officers with reasonable suspicion of criminal activity. *See Bobo*, 37 Ohio St.3d at 178-180. Because the officers had reasonable suspicion to conduct a *Terry* stop, we cannot conclude that Farrey's trial counsel was ineffective for failing to file a motion to suppress based on an impermissible *Terry* stop. Farrey's first assignment of error, as it relates to the reasonable suspicion for the *Terry* stop, is without merit and overruled.

**Scope**

{¶14} Additionally, Farrey argues that his counsel was ineffective for failing to file a motion to suppress the money found in his pocket because it was not readily apparent as contraband, and therefore, exceeded the scope of a *Terry* search.

{¶15} "A *Terry* search is limited in scope to a pat-down search of an individual's outer clothing for weapons." *State v. Robinson*, 9th Dist. Wayne No. 10CA0022, 2012-Ohio-2428, ¶ 19. The purpose of a *Terry* search is to protect the officer. *See State v. Evans*, 67 Ohio St.3d 405, 414 (1993). "The protective pat down under *Terry* is limited to this purpose and cannot be employed by the searching officer to search for evidence of a crime." *Id*. However, under the plain feel doctrine, if, during a pat-down, the officer feels an object that is immediately apparent as contraband, the officer may seize the object. *Robinson*, 2012-Ohio-2428, at ¶ 19, citing *Minnesota v. Dickerson*, 508 U.S. 366, 375-376 (1993).

{¶16} The record is a bit unclear as to how the money was discovered in Farrey's pocket. Officer Nida testified that during his pat down of Farrey he discovered marijuana, keys, and money in Farrey's pants pocket. Assuming arguendo, that the search of Farrey's pocket

exceeded the scope permissible under *Terry*, we conclude that the money would have been admissible under the doctrine of inevitable discovery.

{¶17} Evidence that is illegally obtained is properly admitted "once it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation." *State v. Perkins*, 18 Ohio St.3d 193 (1985), syllabus. Detective Male testified that after Officer Nida discovered the bag of marijuana protruding from Farrey's pants pocket, he secured the other two individuals and searched under the cars in the area where he had seen Farrey make the throwing motion. Detective Male testified that he found a baggy of heroin and a baggy of crack cocaine under the rear of one of the cars. At this point, Officer Nida and Detective Male had probable cause to arrest Farrey for possession of drugs. Officer Nida would have discovered the cash during a search incident to arrest, which would have permitted Officer Nida to search Farrey's person. *See State v. Kinsell*, 9th Dist. Summit No. 25074, 2010-Ohio-3854, ¶ 24. *See also Ashland v. McClain*, 5th Dist. Ashland No. 12-COA-044, 2013-Ohio-2436, ¶ 13-15.

{¶18} Because Officer Nida had probable cause to arrest Farrey and the money would have been discovered during a search incident to arrest, the money was admissible under the inevitable discovery doctrine. Having concluded that the evidence was not subject to the exclusionary rule, we cannot conclude that counsel was ineffective for failing to file a motion to suppress the money found in Farrey's pants pocket.

{¶19} Farrey's first assignment of error is overruled.

Assignment of Error Number Two

FARREY'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF
THE EVIDENCE, AND OUGHT TO BE REVERSED.

{¶20} In his second assignment of error, Farrey argues that his convictions for possession of heroin and cocaine are against the manifest weight of the evidence. Because Farrey does not argue that his conviction for possession of marijuana is against the weight of the evidence, we limit our review accordingly.

{¶21} R.C. 2925.11(A) prohibits a person from knowingly obtaining, possessing, or using a controlled substance. Farrey does not dispute that heroin and cocaine are controlled substances. Instead, Farrey argues that the jury lost its way in finding he possessed the drugs.

{¶22} "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *Thompkins* at 387. An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

{¶23} Officer Nida and Detective Male were the only witnesses to testify at trial. Officer Nida testified that he was working narcotics detail with his partner, Detective Male, on

March 28, 2012. On that day, they were in the area of Maxen Drive and Biruta Street "[c]hecking [on] drug complaints." They were in uniform and driving a marked police cruiser.

{¶24} Both Officer Nida and Detective Male testified that, as they turned the corner from Maxen Drive onto Biruta Street, they noticed two vehicles parked against an apartment building in an otherwise empty parking lot. One of the cars, a Pontiac, was backed into a parking space; its front facing the open parking lot. The other car, a Toyota, was parked in a spot next to the Pontiac, front-end in. The driver's sides of the two cars were facing each other.

{¶25} In between the cars, an individual was standing in the open driver's door of the Pontiac. This person was facing the officers, leaning against the inside of the door, and had his hands resting on top of the door. Both Officer Nida and Detective Male testified that they could see this person's hands the whole time and that he never made any movements as they approached. In addition to this individual, Officer Nida and Detective Male testified that they saw Farrey standing in the parking lot, at the front of the Pontiac, in between the cars. Farrey's back was to the officers as they turned onto Biruta Street. According to both Officer Nida and Detective Male, Farrey turned and looked at the officers, placed his hand in his right pants pocket, hurriedly walked in between the cars toward the back of the Pontiac, bent down and made a throwing motion under the car. Farrey then walked back to the front of the Pontiac and started yelling at the officers that they had no right to be in the lot because it was private property.

{¶26} Officer Nida testified that he noticed a third person sitting in the driver's seat of the Toyota, but that his attention was more focused on Farrey because of "his movements [and] actions." Detective Male testified that he did not notice the person in the Toyota until he pulled onto the apron of the parking lot. While both Officer Nida and Detective Male testified that they

could not see the activities of the person in the Toyota, they both said that they would have noticed if something had been thrown out of the car's window. Both officers testified that they did not see anything exit the driver's window.

{¶27} Officer Nida testified that he approached Farrey as soon as he exited the police cruiser and intended to do a pat down for weapons. Officer Nida explained that as he began the pat down he "observed a baggy of marijuana partially protruding from [Farrey's] right pocket." Detective Male testified that after Officer Nida discovered the marijuana he secured the other two individuals and searched under the cars in the area where he had seen Farrey make the throwing motion. Detective Male testified that he found a baggy of heroin and a baggy of crack cocaine under the rear of the Pontiac.

{¶28} Farrey argues that the drugs could have been "dropped or tossed under the car before they pulled up, or that one of the other [individuals] could [ ] have dropped them while the officers' attention was riveted on Farrey."

{¶29} After a review of the evidence, we cannot conclude that the greater amount of credible evidence supports the possibilities presented by Farrey. *See Thompkins*, 78 Ohio St.3d at 387. Farrey's convictions for possession of heroin and cocaine are not against the manifest weight of the evidence, and his second assignment of error is overruled.

III

{¶30} Farrey's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

CARR, J.
CONCURS.

MOORE, P. J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

JACQUENETTE S. CORGAN, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.