[Cite as *State v. Dudsak*, 2021-Ohio-3632.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

STATE OF OHIO

    Appellant

    v.

DUSTIN DUDSAK

    Appellee

C.A. No.     21CA0033-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    21CR0100

DECISION AND JOURNAL ENTRY

Dated: October 12, 2021

CALLAHAN, Judge.

{¶1}    Appellant, the State of Ohio, appeals from the decision of the Medina County Court of Common Pleas, granting a motion to suppress filed by Appellee, Dustin Dudsak. This Court affirms.

I.

{¶2}    Officer Seth Petit was on duty with his canine partner when he observed a vehicle traveling eastbound on I-76. It is undisputed that Mr. Dudsak was operating that vehicle and had one female passenger. The vehicle's windows were tinted beyond the degree permitted by law, so Officer Petit began to follow it and ran its license plate. As he followed, the vehicle exited the highway, and he saw Mr. Dudsak motion toward the passenger compartment in an "abnormal" manner, as if he was accessing the glove box. The vehicle then began traveling northbound on a four-lane divided roadway. Mr. Dudsak eventually turned left into a gas station parking lot. He

executed the left-hand turn by crossing three lanes of traffic and almost striking another vehicle. At that point, Officer Petit decided to stop Mr. Dudsak's vehicle.

{¶3} Officer Petit activated his lights and sirens, but Mr. Dudsak continued to drive through two portions of the parking lot before stopping near the roadway. Officer Petit took note of the additional time it took Mr. Dudsak to stop. Additionally, upon his approach, he found certain aspects of Mr. Dudsak's behavior suspicious. Specifically, he found suspicious the fact that Mr. Dudsak tried rolling up his window most of the way to talk and tried covering his face with a mask while he was smoking a freshly lit cigarette.

{¶4} Officer Petit spoke with Mr. Dudsak and eventually removed him from his vehicle and frisked him. The frisk did not reveal any weapons or contraband, but Officer Petit remained suspicious, in part, because Mr. Dudsak denied that he had reached toward the glove box. After Mr. Dudsak refused to consent to a search of his vehicle, Officer Petit retrieved his canine and led the canine around the vehicle. The canine alerted to the presence of narcotics near the driver's side door, but a search of the vehicle did not reveal any narcotics. Based on his observations, the canine's positive alert, and the fact that no drugs were found in the vehicle, Officer Petit immediately searched Mr. Dudsak and found a vial containing methamphetamine in his pants pocket.

{¶5} As a result of the foregoing incident, Mr. Dudsak was indicted on one count of aggravated possession of methamphetamine. He moved to suppress the evidence against him, the State filed a brief in opposition, and the trial court held a hearing on his motion. Following the hearing, the court issued a written decision. The court determined that Officer Petit lacked probable cause to conduct a warrantless search of Mr. Dudsak's person. Thus, it granted the motion to suppress.

{¶6}    The State now appeals from the trial court's suppression ruling and raises one assignment of error for this Court's review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED IN GRANTING APPELLEE DUDSAK'S MOTION TO SUPPRESS EVIDENCE.  THIS COURT SHOULD OVERRULE ITS DECISION IN *STATE V. KAY* AND HOLD THAT WHEN A DRUG DOG ALERTS ON A VEHICLE, IT PROVIDES PROBABLE CAUSE NOT ONLY TO SEARCH THE VEHICLE, BUT TO PLACE THE VEHICLE'S OCCUPANTS UNDER ARREST AND SEARCH THEM INCIDENT TO THE ARREST.  IN ANY EVENT, THE INSTANT CASE IS DISTINGUISHABLE FROM *KAY* BECAUSE THERE WAS SUBSTANTIAL OTHER EVIDENCE OF CRIMINAL ACTIVITY OUTSIDE OF THE DRUG DOG ALERT TO JUSTIFY A SEARCH OF DUDSAK'S PERSON.

{¶7}    In its sole assignment of error, the State argues that the trial court erred when it granted Mr. Dudsak's motion to suppress.  The State asks this Court to overturn its decision in *State v. Kay*, 9th Dist. Wayne No. 09CA0018, 2009-Ohio-4801, and conclude that, when a canine alerts to the presence of narcotics in a vehicle, the positive alert gives rise to probable cause to search both the vehicle and its occupants.  Alternatively, the State argues that this case is distinguishable from *Kay* in that the totality of the circumstances provided Officer Petit with probable cause to search Mr. Dudsak's person.  For the following reasons, this Court rejects the State's arguments.

{¶8}    This Court's review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact.  *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.  "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses."  *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992).  Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible

evidence." *Burnside* at ¶ 8. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

{¶9} The trial court made each of the following findings of fact in its suppression ruling. Just before 4:30 p.m., Officer Petit spotted Mr. Dudsak's vehicle traveling eastbound on I-76. Officer Petit was patrolling the area with his canine partner and noticed the vehicle because it had illegally tinted windows. The officer followed the vehicle as it exited the highway and saw the driver, Mr. Dudsak, "make a motion towards the passenger compartment as if accessing the glove box." Shortly thereafter, Mr. Dudsak turned left into a gas station across three lanes of traffic and almost struck a vehicle in an adjacent lane. Based on the traffic violations Officer Petit observed, he followed Mr. Dudsak into the gas station parking lot and activated his cruiser's lights and sirens.

{¶10} It was Officer Petit's impression that Mr. Dudsak took "a slightly abnormal amount of time to stop" as he drove through two portions of the gas station's parking lot before stopping. The officer also found it suspicious that Mr. Dudsak (1) rolled his window most of the way up instead of down as he (the officer) approached the car and (2) tried to cover his face with a mask when he appeared to be actively smoking a freshly lit cigarette. Officer Petit spoke with Mr. Dudsak and his female passenger. Because Mr. Dudsak had a protection order against him and the female passenger did not have any identification on her person, Officer Petit returned to his cruiser to verify her identity and ensure that she was not the female named in the protection order. As he did so, he called for assistance, and the officer who arrived began the process of

5

generating a warning or traffic ticket for Mr. Dudsak. Meanwhile, Officer Petit spoke with Mr. Dudsak about the suspicious behavior he had observed.

{¶11} Mr. Dudsak denied reaching toward the vehicle's glove box and insisted that he had only been "messing with his girlfriend's skirt." He exited the vehicle at Officer Petit's command, and Officer Petit performed a pat down. The officer did not find any weapons or contraband on Mr. Dudsak's person, and Mr. Dudsak refused to consent to a vehicle search. The officer was still troubled by the things he had observed, however, so he decided to walk his canine around the vehicle. The canine alerted to the odor of narcotics coming from the vehicle at a location near the driver's side window.

{¶12} Officer Petit searched Mr. Dudsak's vehicle but failed to find any illegal narcotics. He then immediately searched Mr. Dudsak because he suspected "the narcotics may be on the driver or passenger * * * based on everything that [he] had observed and all the suspicious behavior and the dog's alert and not finding any narcotics [in the vehicle]." When Officer Petit reached into the coin pocket of Mr. Dudsak's pants, he extracted a small plastic vial containing methamphetamine.

{¶13} The State has not challenged any of the trial court's factual findings, and the record supports the conclusion that those findings are based on competent, credible evidence. As such, this Court accepts those findings as true and limits its review to the legal issues presented herein. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8.

{¶14} The State argues that the trial court erred when it granted Mr. Dudsak's motion to suppress because Officer Petit had probable cause to search him. The State asks this Court to hold, as a matter of law, that a positive canine alert on a vehicle gives rise to probable cause to search the vehicle, to arrest its occupants, and to search them incident to arrest. Alternatively,

the State asks this Court to conclude that the search Officer Petit performed was supported by probable cause under the totality of the circumstances.

{¶15} "'"[W]hen a [trained drug] dog alerts to the presence of drugs [inside a vehicle], it gives law enforcement probable cause to search the entire vehicle."'" (Alterations sic.) *State v. R.L.*, 9th Dist. Summit No. 29573, 2020-Ohio-2811, ¶ 8, quoting *State v. Reid*, 9th Dist. Lorain No. 12CA010265, 2013-Ohio-4274, ¶ 9, quoting *State v. Almazan*, 9th Dist. Medina No. 05CA0098-M, 2006-Ohio-5047, ¶ 15. Yet, "[a] canine alert alone does not establish probable cause sufficient to fully search or arrest the occupant of a vehicle * * *." *State v. Robinson*, 9th Dist. Wayne No. 10CA0022, 2012-Ohio-2428, ¶ 14. *Accord Kay*, 2009-Ohio-4801, at ¶ 15-16. The positive alert is merely one factor that may be considered in conjunction with the totality of the circumstances. *Robinson* at ¶ 14. "Absent some other exception to the warrant requirement, a search of the [occupant's] person must be based on probable cause that he has engaged or is engaging in criminal activity." *R.L.* at ¶ 8, citing *Kay* at ¶ 9-17 and *Wyoming v. Houghton*, 526 U.S. 295, 303 (1999). The requisite probable cause for the search must be "particularized with respect to that person." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). "This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search * * * the [place] where the person may happen to be." *Id.*

{¶16} Probable cause consists of "'a reasonable ground for belief of guilt.'" *State v. Moore*, 90 Ohio St.3d 47, 49 (2000), quoting *Carroll v. United States*, 267 U.S. 132, 161 (1925). While "[t]he amount of evidence necessary for probable cause * * * is less evidence than would be necessary to support a conviction * * *[,]" *State v. McGinty*, 9th Dist. Medina No. 08CA0039-M, 2009-Ohio-994, ¶ 11, probable cause is "a stricter standard than reasonable and articulable suspicion[,]" *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 23. *See also*

*Brinegar v. United States*, 338 U.S. 160, 175 (1949) (probable cause means "more than bare suspicion"). The question of whether an officer had probable cause to arrest a defendant "is a fact-intensive inquiry * * *.'" *State v. Davis*, 9th Dist. Summit No. 29273, 2020-Ohio-473, ¶ 19. "The determination 'is made from the totality of the circumstances.'" *R.L.* at ¶ 9, quoting *State v. White*, 9th Dist. Wayne No. 05CA0060, 2006-Ohio-2966, ¶ 24. "'Factors to be considered include an officer's observation of some criminal behavior by the defendant, furtive or suspicious behavior, flight, events escalating reasonable suspicion into probable cause, [and] association with criminals and locations.'" *White* at ¶ 24, quoting *State v. Shull*, 5th Dist. No. 05-CA-30, 2005-Ohio-5953, ¶ 20. *See also Robinson* at ¶ 14 (noting that a canine's positive alert on a vehicle is a factor that an officer may consider).

{¶17} The State's first argument is that this Court ought to overrule its decision in *Kay*, 2009-Ohio-4801. In *Kay*, an officer followed a vehicle from a known drug house and executed a traffic stop when the vehicle made an improper turn. *Kay* at ¶ 5. The officer saw the front seat passenger (Mr. Kay) moving his body around inside the stopped vehicle, so he requested a canine unit. A canine sniff was performed while the driver and Mr. Kay remained inside the vehicle, and the canine alerted to the presence of narcotics at the driver's door. The occupants were then removed from the vehicle and asked to consent to a search of their persons. While the driver consented, Mr. Kay refused and tried to walk away. He returned on command, but it appeared to the officers that he intended to walk away again. Accordingly, they handcuffed him and placed him under investigatory detention while they searched the vehicle. When the vehicle search failed to reveal any contraband, the officers told Mr. Kay that he would be searched. Mr. Kay tried to refuse, but the officers held him down and searched him. The search revealed a crack pipe inside his pocket.

{¶18} Mr. Kay moved to suppress the evidence found during the search of his person, and the trial court granted his motion. *Id.* at ¶ 3. The State then appealed and argued that the police had probable cause to search and/or arrest Mr. Kay. *Id.* at ¶ 3, 8. In affirming the lower court's ruling, this Court noted that the canine sniff that was performed gave the police probable cause to believe drugs would be found inside the vehicle they searched, not probable cause to believe Mr. Kay was guilty of a drug-related offense. *Id.* at ¶ 16. This Court rejected the State's "process-of-elimination argument," *id.* at ¶ 15, noting that a negative search of a vehicle "does not necessitate the conclusion [that] drugs must therefore be with one of the occupants of the vehicle," *id.* at ¶ 16. This Court reasoned that it was just as likely that a canine might have "alerted to the residual odor of narcotics from past occupants of the vehicle or to drug particles too small to humanly detect." *Id.* at ¶ 16. Because the police only had a suspicion Mr. Kay might have committed a drug-related offense, this Court agreed that probable cause was lacking and upheld the trial court's suppression ruling. *Id.* at ¶ 9-17.

{¶19} The State asks this Court to overturn *Kay* and hold that a positive canine alert on a vehicle provides police with probable cause to search the vehicle, to arrest its occupants, and to search them incident to arrest. *See United States v. Anchondo*, 156 F.3d 1043, 1045-1046 (10th Cir.1998) (canine alert on defendant's car provided sufficient probable cause to arrest the defendant). This Court declines to do so. In *Kay*, this Court explicitly rejected the State's invitation to adopt the reasoning of the Tenth Circuit in *Anchondo*. *Kay*, 2009-Ohio-4801, at ¶ 20. The State has not adequately explained why this Court should revisit its decision at this time. *See* App.R. 16(A)(7). Nor has the State pointed this Court to any caselaw that was not already in existence at the time the *Kay* decision was issued. *See id.* This Court has repeatedly held that "[a] canine alert alone does not establish probable cause sufficient to fully search or arrest [the

passenger] of a vehicle * * *." *Robinson*, 2012-Ohio-2428, at ¶ 10, 14. *Accord R.L.*, 2020-Ohio-2811, at ¶ 8. That holding is in accord with the United States Supreme Court's directive that probable cause for a search of a person must be "particularized with respect to that person." *Ybarra*, 444 U.S. at 91. To the extent the State argues otherwise, this Court rejects its argument.

{¶20} The State also argues that the trial court erred by granting Mr. Dudsak's motion to suppress because, under the totality of the circumstances, Officer Petit had probable cause to search Mr. Dudsak. The State notes that Mr. Dudsak made a furtive movement toward the passenger compartment, denied making that movement, took an abnormal amount of time to stop his vehicle, tried to roll up his window when Officer Petit approached, and tried covering his face with a mask despite having just lit a cigarette. Additionally, the State notes that Mr. Dudsak was one of only two occupants in the vehicle, the canine positively alerted to the presence of narcotics, and no drugs were found inside the vehicle. The State argues that the foregoing information, when viewed collectively, gave Officer Petit probable cause to believe Mr. Dudsak was guilty of a crime and to search his person.

{¶21} Upon review, this Court cannot conclude that Officer Petit had probable cause to search Mr. Dudsak under the totality of the circumstances presented herein. *See R.L.* at ¶ 9. Officer Petit saw Mr. Dudsak make one "abnormal" movement toward the passenger compartment. Mr. Dudsak explained, however, that he had simply been "messing with his girlfriend's skirt." Moreover, at the point in time that Officer Petit observed Mr. Dudsak's movement, he had yet to activate his lights and sirens or otherwise give Mr. Dudsak any indication that he intended to stop his vehicle. The record is devoid of any evidence that Mr. Dudsak was even aware that Officer Petit was behind him, and Officer Petit did not testify that he saw any furtive movements once he signaled Mr. Dudsak to stop. *Compare White*, 2006-

Ohio-2966, at ¶ 25. Officer Petit did testify that it took Mr. Dudsak a "slightly abnormal" amount of time to stop. Yet, it is not clear from the record how much time elapsed. Nor was there evidence about the specific layout of the gas station parking lot or whether it was crowded or empty at that time of day. While a driver's decision to proceed to the opposite end of an empty parking lot might be viewed as suspect, the same might not be said of a driver confronted with other vehicles in a busy lot. Without additional information, this Court cannot say whether Mr. Dudsak acted in a suspicious manner when he failed to immediately stop his vehicle.

{¶22} To the extent Mr. Dudsak began rolling up his window when Officer Petit approached and tried covering his face with a mask while smoking a cigarette, this Court would note that the events herein took place during a global pandemic. It is not unreasonable that an individual would be concerned or confused about distancing or mask protocols during a traffic stop. There is no indication in the record that Mr. Dudsak attempted to avoid eye contact with Officer Petit, appeared nervous, supplied him with evasive answers, or otherwise acted in a suspicious manner while speaking with him. His actions in rolling up his window and covering his face must be viewed in the context of the timeframe in which they occurred. *See Florida v. Harris*, 568 U.S. 237, 244 (2013), quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983) ("Probable cause * * * is 'a fluid concept – turning on the assessment of probabilities in particular factual contexts * * *.'").

{¶23} Finally, although there was a positive canine alert on Mr. Dudsak's vehicle and no drugs were found inside, that fact, standing alone, did not provide Officer Petit with probable cause to arrest Mr. Dudsak and search his person. *See Robinson*, 2012-Ohio-2428, at ¶ 10, 14; *Kay*, 2009-Ohio-4801, at ¶ 20. The positive canine alert was one factor that Officer Petit could consider in conducting his investigation. *See Robinson* at ¶ 14. To search Mr. Dudsak's person,

the officer needed probable cause particularized to Mr. Dudsak. *Kay* at ¶ 20, citing *Ybarra*, 444 U.S. at 91. Officer Petit explicitly stated that he searched Mr. Dudsak because, given the canine alert and the lack of contraband in the vehicle, he suspected narcotics might be on Mr. Dudsak *or the passenger*. It is apparent that his suspicion was not particularized but encompassed both occupants based on their association with the vehicle. *But see Ybarra*, 444 U.S. at 91. Even if Officer Petit suspected that Mr. Dudsak might be engaging in criminal activity, reasonable suspicion does not justify a warrantless arrest and search of a suspect's person. *See State v. Hetrick*, 9th Dist. Lorain No. 07CA009231, 2008-Ohio-1455, ¶ 19. The particular facts and circumstances presented herein do not support the conclusion that Officer Petit had probable cause to believe Mr. Dudsak was guilty of a crime. *See Moore*, 90 Ohio St.3d at 49, quoting *Carroll*, 267 U.S. at 161. Accordingly, this Court cannot conclude that the trial court erred when it granted Mr. Dudsak's motion to suppress. The State's sole assignment of error is overruled.

III.

{¶24} The State's sole assignment of error is overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

TEODOSIO, P. J.
SUTTON, J.
CONCUR.

APPEARANCES:

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellant.

COLE F. OBERLI, Attorney at Law, for Appellee.