[Cite as *State v. Roberts*, 2020-Ohio-78.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| JOSHUA W. ROBERTS | : | Case No. 2019-CA-00019 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                  Pleas, Case No. 2018-CR-00053


JUDGMENT:                         Affirmed


DATE OF JUDGMENT:                 January 13, 2020


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

DARCY T. COOK                             BRADLEY S. NICODEMUS
239 West Main Street                      1409 West Market Street
Suite 101                                 Baltimore, OH  43105
Lancaster, OH  43130

*Wise, Earle, J.*

{¶ 1}   Defendant-Appellant, Joshua W. Roberts, appeals the September 6, 2018 statement of facts and conclusions of law of the Court of Common Pleas of Fairfield County, Ohio, denying his motion to suppress.  Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On February 1, 2018, the Fairfield County Grand Jury indicted appellant on two counts of aggravated possession of drugs in violation of R.C. 2925.11, one count of possessing dangerous drugs in violation of R.C. 4729.51, one count of possessing drug paraphernalia in violation of R.C. 2925.14, and one count of driving under suspension in violation of R.C. 4510.16.  Said charges arose from an investigatory stop.

{¶ 3}   On April 16, 2018, appellant filed a motion to suppress, challenging the stop. A hearing was held on July 26, 2018.  At the conclusion of the hearing, the trial court denied the motion.  The trial court journalized its decision via statement of facts and conclusions of law filed September 6, 2018.

{¶ 4}   On April 8, 2019, appellant pled no contest to the charges.  By judgment entry of sentence filed April 9, 2019 and two nunc pro tunc judgment entries of sentence filed May 6 and 14, 2019, respectively, the trial court found appellant guilty and sentenced him to an aggregate term of twenty-four months in prison, only eight months imposed.

{¶ 5}   Appellant filed an appeal and this matter is now before this court for consideration.  Assignment of error is as follows:

I

{¶ 6} "THE TRIAL COURT ERRED IN DETERMINING THE OFFICER HAD SUFFICIENT REASONABLE ARTICULABLE SUSPICION TO EFFECTUATE AN INVESTIGATORY TRAFFIC STOP."

I

{¶ 7} In his sole assignment of error, appellant claims the trial court erred in denying his motion to suppress. We disagree.

{¶ 8} As stated by the Supreme Court of Ohio in *State v. Leak,* 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 12:

"Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. In ruling on a motion to suppress, "the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.,* citing *State v. Mills,* 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). On appeal, we "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.,* citing *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accepting those facts as true, we must then "independently determine as a matter of law, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

{¶ 9} As the United States Supreme Court held in *Ornelas v. U.S.,* 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 94 (1996), "…as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶ 10} In his motion to suppress and in his appellate brief, appellant argues the officers did not have probable cause to conduct an investigatory stop.

{¶ 11} In *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court determined that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to *Terry*, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. The propriety of an investigative stop must be viewed in light of the totality of the circumstances surrounding the stop "as viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews,* 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991); *State v. Freeman,* 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980).

{¶ 12} Reynoldsburg Police Officer Daniel Downing testified at the suppression hearing. He and his partner were working the overnight shift on January 24, 2018, patrolling the Taylor Square shopping area in the city of Reynoldsburg in Fairfield County. T. at 14-17, 46. The officers were patrolling the area for "preventative patrol" "due to the high incidence of thefts and narcotic use in the area." T. at 19. Officer Downing personally has dealt with "thefts of push-outs coming out the emergency exits from

Walmart."  *Id.*  He explained "a person will load up their cart in Walmart and they'll kind of stage over here inside.  A car will run back here and wait for them.  As soon as they pop out the side door, the car will pull up.  They'll load as much stuff as they can and they'll just take off."  T. at 19-20.  Officer Downing continued (T. at 20):

> We had quite a few of those going on.  Actually intercepted a few. Also intercepted two gentlemen that had backed in right here to the Walmart tire and battery cages.  And we actually jumped them a little early and they didn't even get a chance to cut the locks off with their big bolt cutters.
>
> Pallet thefts recently as well in the last probably six to eight months or even sooner prior to January.  People are stealing pallets at the back of Walmart here.
>
> So it's just kind of a  - - I don't know what you call it, not an epidemic, but there's a lot of thefts going on at night from the buildings on the sides and the back.

{¶ 13} Officer Downing explained in the city of Reynoldsburg, "the highest number of felony drug cases that are being produced are from the Taylor Square area."  T. at 21. The Walmart and Sam's Club are specific areas.  *Id.*  The two stores are connected by a "little drive" with a "big wooded area" in between.  T. at 16-17, 18.  Many times the individuals are backed in by the tree line and/or by the tire cages.  T. at 21-22.

{¶ 14} At about 2:57 a.m. on the morning of January 25, 2018, the officers observed a white SUV "backed into the woodline right here at the side of Sam's Club

where their tire center is, the tire cage." T. at 18; State's Exhibit 1. Sam's Club was not open. *Id.* Officer Downing admitted it was perfectly legal for the vehicle to be parked there at that time. T. at 71. The plan was to "cut off the headlights and wait" for the vehicle's occupants to "get out and probably break into the tire cage." T. at 23. Instead, Officer Downing assumed they were spotted and the SUV started to move down an access road perpendicular to the officers. *Id*; State's Exhibit 2*.* The driver moved from the Sam's Club parking lot to the Walmart parking lot and at that time, Officer Downing initiated a traffic stop with his lights. T. at 24, 75. Officer Downing stated he did not observe any traffic violations as the stop was an investigatory stop. T. at 25, 91. He explained "I had reasonable suspicion that criminal activity was afoot due to the high activity of thefts in the area. I suspected that a theft had occurred or was about to occur from the tire cage at Sam's Club, being a closed business at 3:00 o'clock in the morning." T. at 25-26. On cross-examination, Officer Downing stated the investigatory stop was based on more than a "hunch" as it was based on "the amount of thefts that have been going around there with cars backed in by the battery cages, behind the buildings and the sides." T. at 76, 91. He found the white SUV to be suspicious because "[i]t's very unusual to see an occupied vehicle at 3:00 o'clock in the morning over by the cages over there." T. at 82.

{¶ 15} Officer Downing's partner approached the vehicle and started interviewing the occupants. T. at 35-36. The driver of the vehicle was appellant. T. at 59-60. Officer Downing approached the vehicle and observed a "large torch lighter" on the center console and "a small piece of cellophane or baggie that looked like the driver was trying to kick over and conceal with his foot." T. at 36, 38. A check of appellant's driver's license

established his license was under suspension.  T. at 34, 49, 51.  The stop continued and appellant was subsequently charged as stated above.  Because appellant on appeal is only challenging the officers' sufficient reasonable articulable suspicion for the stop, the remaining facts are superfluous.

{¶ 16} At the conclusion of the suppression hearing, the court denied the motion, finding "the stop was sufficient because the vehicle was parked in a high crime area, it was late at night, 3:00 a.m.  The vehicle was more specifically parked near Sam's Club, its fenced-in tire area."  T. at 98.  The trial court further stated (T. at 99):

Also, it's noteworthy to add to the suspicion, as Officer Downing's police cruiser approached, started getting closer to where this vehicle was parked, the vehicle suddenly left the parking spot and proceeded to drive off.  Granted, it could have driven in a different direction away from the officer, but the fact that it moved at the same time that Officer Downing approached seemed suspicious to Officer Downing.

And so when you add all of those things together, the Court is finding that the stop was justifiable.

{¶ 17}  In its statement of facts and conclusions of law filed September 6, 2018, the trial court journalized its decision, finding the officers had reasonable suspicion to initiate the investigatory stop.  The trial court noted the evidence established:

(1) the Taylor Square shopping center, specifically the Walmart and Sam's Club stores, had fallen victim to multiple theft offenses during the time preceding the Defendant's arrest; (2) the Defendant was parked in a similar way to other vehicles which had been involved in theft offenses involving Walmart and Sam's Club; (3) the Defendant was parked in the Sam's Club lot at a time that the store had been long closed; and (4) when the Officers began approaching the Defendant's vehicle the Defendant pulled away from the spot in which he was parked.  The Court finds that Officers Downing and Scalmato had established a set of reasonable, articulable facts which would lead to a reasonable, articulable suspicion that the Defendant had been, was, or was about to engage in criminal activity such that their investigative stop of the Defendant was warranted in this situation.

{¶ 18} As noted by the Supreme Court of Ohio in *State v. Hairston,* 156 Ohio St.3d 363, 2019-Ohio-1622, ¶12: "An officer's experience with criminal activity in an area and an area's reputation for criminal activity are factors we have found relevant to the reasonable-suspicion analysis. * * * Further, the stop occurred after dark—another circumstance we have found to be of some significance in the reasonable-suspicion analysis." (Citations omitted.)  The facts must be "taken together and viewed in relation to each other." *Id.* at ¶13.  As noted by this court in *State v. Edwards,* 5th Dist. Stark No. 2006-CA-00107, 2007-Ohio-705, ¶30, citing *State v. Bobo,* 37 Ohio St.3d 177, 524 N.E.2d 489:

The Ohio Supreme Court has identified certain specific and articulable facts that would justify an investigatory stop by way of reasonable suspicion, factors which fall into four general categories: (1) location; (2) the officer's experience, training or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances.

{¶ 19} In considering the totality of the circumstances through the eyes of a reasonable police officer, we cannot say the trial court erred in finding the stop to be warranted. Officer Downing had sixteen years of law enforcement experience and clearly testified to the trouble he personally knew was occurring in the parking lots at Taylor Square, specifically around the tree line by the Walmart and Sam's Club. This particular area was a targeted patrol area for thefts and drugs and was his assigned area for at least a year. The subject vehicle was observed parked, backed-in, by the tree line at approximately 3:00 a.m. when Sam's Club was closed. This parking position is a common "quick get-away type deal" so the occupants can keep an eye out for the police. T. at 26. After the police observed the vehicle, the vehicle pulled away. Based upon his training and experience, Officer Downing testified appellant's behavior was suspicious; either a theft had occurred or was about to occur. Based upon all of the circumstances taken as a whole and viewed in relation to each other, Officer Downing articulated a reasonable suspicion that appellant had engaged or was about to engage in criminal activity warranting the stop.

{¶ 20} Upon review, we find the trial court did not err in denying appellant's motion to suppress.

{¶ 21} The sole assignment of error is denied.

{¶ 22} The judgment of the Court of Common Pleas of Fairfield County, Ohio is hereby affirmed.

By Wise, Earle, J.

Gwin, P.J. and

Baldwin, J. concur.

EEW/db